H. G. WILLIAMS; Janie Williams; Clyde A. Bass; Henry Koch; Ruth Louise Koch; Frank Raines; Pauline Raines; Lester Raines; Neta Raines; Herman F. Held; Stella B. A. Held; Aloys Heisserer; Mary M. Heisserer; Wm. H. Moore; Mauda B. Moore; Paul H. Blattel; Vernedia Blattel; Joe Urhahn; Bertha Urhahn; W. A. Eifert; Rovena Eifert; Harold A. Roth; Juanita R. Roth; B. J. Bruhl; Ella Bruhl; Robert A. Schiwitz; Mabel Schiwitz; Alfred W. Raines; Betty Lou Raines; Frank G. Campbell and Annie Lee Campbell, Respondents,

v.

CITY OF ILLMO, a Municipal Corporation, Appellant.

No. 7216.

Springfield Court of Appeals.

Missouri.

May 5, 1955.

J. Grant Frye, Cape Girardeau, for appellant.

Stephen Barton, Thomas L. Arnold, Benton, for respondent.

McDOWELL, Presiding Judge.

This is an action in equity by owners of real estate located adjacent to the city of Illmo, Missouri, to declare void an extension of that city which includes their property. The action further seeks to enjoin the city officials from enforcing said ordinance. The judgment of the court was in favor of plaintiffs declaring the extensions void and enjoining the officers and agents of said city from enforcing them. Defendant appealed.

The petition in substance states that defendant-City passed ordinance No. 393 to submit to the voters a proposition to extend the city limits annexing two separate tracts of land designated as tract I and tract II. An election was had April 1, 1952, and the extension adopted by a vote of 128 to 127, and the officers of said city have taken steps to put the extension into effect and exercise jurisdiction over the areas included in the ordinance; that said properties sought to be annexed are lands used solely for agricultural and horticultural purposes and for country homes; that the extension in no way redounds to the benefit of the city or makes its limits more regular; that there would be an increased tax burden upon plaintiffs; that there now is ample unimproved real estate within the present city limits to care for all its needs; that the population is sufficiently stable as not to indicate any future needs for the annexed territory; that the territory annexed is not needed for streets, sewers, water mains, residential or business use, nor is it needed for police or health requirements and the only purpose of such annexation is to secure additional revenue; that the ordinance is unreasonable and oppressive.

The petition asks for the ordinance to be declared void and that the defendant's officers, agents and employees and their successors be enjoined from attempting to enforce it.

The answer is a general denial and an affirmative plea that the annexed territory is now served by the city in the way of fire protection, municipal water system, sanitation, sewer disposal, police regulation of dogs, voting facilities, reduced fire insurance risks and other incidental benefits; that the city has a low tax rate and practically no indebtedness, has modern fire fighting equipment, sewer system, municipal water system, excellent streets and sidewalks and other features.

The judgment of the trial court rendered April 11, 1953, held the ordinance void and enjoined the city, its officers and persons from putting into force said ordinance extending the limits of the city and from exercising municipal authority including the assessing of taxes on lands in the territory sought to be annexed.

The evidence shows that Illmo was incorporated as a city of the fourth class in 1906 and embraces about 390 acres within the corporate limits. It is bisected by the main line of the Cotton Belt Railroad

running east and west. It has developed in two sections. The section north of the railroad is a residential and manufacturing section. The section south of the railroad contains the main residential and business section of the town. According to the census the population in 1910 was 976; in 1930, 1129; in 1940, 1224; and in 1950, 1247. The west boundary of Illmo joins the city of Fornfelt, which has a population of 1539, and west of Fornfelt is the village of Ancel, having a population of 295. They usually speak of these three cities as "Tri-city". They all adjoin and lie along the Cotton Belt Railroad right-of-way from east to west. The southern section lies south and east of the depot on the north side of Hickory street from First to Second street, then on both sides of Second street south two blocks to Cherry street.

The city is composed of 1383 platted lots or approximately 70 blocks of 24 lots each. 1244 of these lots are in the southern section and 139 in the northern section. While there is conflicting evidence as to the amount of vacant lots, we think the testimony is that there were about 530 of the platted lots vacant or twenty five per cent as shown by the city and county assessors' books, at the time of the annexation; that 112 of these vacant lots are on hard surfaced streets. The evidence also shows that at the time of the annexation, about twenty five per cent of the territory within the city limits was unplatted land, much of it used for farming purposes. The evidence shows that much of the railroad property within the city limits was idle and unused at the time of the annexation and was available to the city for industrial and business property. It shows that at the time of the annexation there were 333 business improvements and residences in Illmo. There were houses listed for sale and practically no demand for building sites; that only 15 new homes had been built within the city in the last 10 years; that many of the vacant lots are in the business district and nearby improved residential areas.

The evidence further shows that the city once supported three large hotels in the business district, which have disappeared years ago and the sites are now vacant; a large three story opera house once existed but burned down and the lot remains vacant. However, there is a picture show, two small rooming houses to take care of the hotel accommodations, drug stores, garment factories and other business buildings.

As to the growth of the city, we quote from defendant's brief, page 5: "There has been a decrease in the number of hotels and eating establishments during the past thirty-odd years. A part of the "round-house had been removed, a part of the repair shops of the Cotton Belt Railroad had been taken away, and the stockyards were no longer in existence."

We further quote from defendant's brief, on page 6: "The assessor thought that the city area was about 390 acres. Of this, about 90 acres was in railroad property. About 90 acres of the rest was unplatted. This left about 210 acres in buildings.

"The consolidated school district in which Illmo (and also Fornfelt) was located, had an assessed valuation in 1952 of $1,176,940.

"The city had a bonded indebtedness of $17,000.00 which was the balance of the costs of the municipal water works. * * It had a sinking fund to redeem those bonds with the sum of $12,000.00 in it. The bonds could not be paid as they were not callable. They were payable at the rate of $2,000.00 per year."

As to the territory included in the city limits, we quote from defendant's brief, page 7: "The terrain on which the City of Illmo is located is generally steep and hilly, being a part of the Mississippi River hills. Illmo is 'composed of cuts and draws.'

"All the streets were laid out at right angles and went up and down hills in a constant pattern of squares. One witness for the city said: 'The prime purpose of the city taking this in is not to make the streets more regular. * * *'"

Defendant's testimony is that the city now has about 50 blocks of cement, concrete

or bituminous concrete streets, 150 blocks of sidewalks and had recently paved 23 additional blocks of streets.

The outlet from the city is first a farm to market road, Route K, which extends from Highway 61 at the western border of Ancel on the north side of the railroad through Ancel, Fornfelt and into the north section of Illmo. It crosses the railroad tracks near the depot to the south, passes over First street in the south section of Illmo, turns east on Hickory street one block, then due south on Second street to the south city limits where it intersects a public road, called the Commerce road, leading to the south.

The evidence on the part of defendant is that there is talk of another highway being extended from the south section of Illmo down the south side of the railroad right-of-way to Highway 61. The main outlet, however, is Route K, which connects with U. S. Highway 61.

Defendant, in its brief, admits it does not have equipment for street maintenance but rents such equipment from the Illmo Special Road District.

We think the evidence is admitted that at the time Illmo was established it was a railroad town; that much of the railroad business has now been discontinued or moved to other sections. A part of the railroad shops are gone and much of the business that used to be done in the Illmo shops has been discontinued.

As to fire fighting equipment, the city owns one fire truck which cost approximately $10,000.00. As to the defendant's testimony of offering fire protection to the proposed annexation of tract I, defendant's witness, Martin, testified that 18 years previously, while he was fire chief, he had helped extinguish a fire on plaintiff-Williams' house in tract I. As to police protection the city has a police judge and a city marshal. As to sanitation, Dr. Dorris, a member of the City Council, was appointed Health Commissioner and the testimony is that the city had sprayed the surrounding territory on one occasion by air-

plane with DDT to kill noxious insects; that the city had by ordinance provided for the vaccination of dogs and for the destruction of stray dogs; it had ditched and drained areas of the city; that it has a weed killing and weed cutting program and clean-up campaign.

As to other municipal services, we quote from defendant's brief, page 13: "Illmo owned and operated a municipal water system. It had a limited sewer system, * * * although its main sewage disposal was the drainage canal and its laterals as mentioned hereinafter".

Defendant's brief states: "The City of Illmo had a newspaper, a bank, a modern theater, three churches, natural gas, * * fraternal organizations, and a service club. It was the home of two of the schools in the consolidated district and of Illmo Special Road District.

" * * * It was on a 4-lane limited access highway to Cape Girardeau ten miles to the north. It had a modern telephone system."

The water system consists of two deep wells and had 352 water users. It seems that well No. 1 had been sealed because of contaminated water and defendant's testimony is that well No. 2 will not furnish sufficient water to operate the fire department properly. The evidence also shows that in time of stress Illmo gets water from Fornfelt wells.

The evidence offered as to services to inhabitants on tract I of the territory annexed, is that Frank Raines, one of plaintiffs, purchased a tract of land from Frank Bean; that at the time of the purchase Bean was getting water from the city and had been paying $2 per month for the water applied on the cost of the water line which Bean had personally laid from the southern border of the city out to his place. The evidence shows that the city gave Bean a check for $36.72 for the balance of the cost of the water main. We quote from defendant's brief, page 19: "Since 1936, the city had apparently furnished water at municipal rates to all the

persons living in 'Tract I' except three,— plaintiffs Williams, Moore, and Lester Raines. Lester Raines and Moore got their water from Fornfelt. Williams was the only one of the plaintiffs who did not receive city water from either the City of Illmo or the City of Fornfelt. The plaintiffs had constructed their own mains to the city limits. Illmo had furnished water for Frank Raines' home and his dairy barn. His house and dairy barn are not in 'Tract I' but are south thereof."

As to the need of tract I for drainage and health matters we think the testimony shows there is a small spring branch which originates south of the city limits and east of the Commerce road, flows through a tile into a depression or a hollow just south and around the southwest part of the city limits, goes into the Frye tract of land and on into the drainage ditch leading west along the railroad right-of-way. While the testimony is conflicting as to this branch being a breeding place for mosquitoes, the evidence is almost conclusive that this branch is in a pasture field used solely for agricultural purposes, is kept clean and creates no health problem.

As to the extension of streets over tract I, we think defendant practically admits that because of the low depression which defendant says is about a block wide extending along the southwest border of the city limits in the proposed annexation of tract I, it would be a practical impossibility to extend the streets into the new extension. Defendant, however, contends that the city would not attempt to so extend its streets but would go around this depression and run circular streets for the new addition. To say the least, this is a very speculative matter.

There is strong conflict of testimony as to building sites in the city of Illmo before the extension. Defendant had witnesses testifying they wanted to build new homes but could not find suitable locations within the city limits. There was a strong dispute as to the unimproved tracts of land within the city limits which now are being used as farm lands as to their suitability for building purposes.

Defendant's testimony also is to the effect that the city will need additional school sites. However, this testimony is very speculative. Illmo is in a special school district which covers the territory sought to be annexed and territory which includes the city of Fornfelt. There certainly was no specific evidence that this territory was needed for a new school location or for the purposes of establishing a city well. And if such territory were needed for school purposes the evidence shows that the school board could acquire it without it being within the city limits.

We think the evidence is undisputed that tract I contains about 182 acres of unplatted farm lands, all but a very small portion being used solely for agricultural purposes; that part of the tract which lies just south and west of the old city line contains a deep gorge or valley through which a spring branch enters from the east through a tile in the Commerce road, flows in a northwesterly direction around the edge of the old town, enters the Frye 37 acre tract on the west and flows on in to the drainage ditch which leads west from the north side of the south section of the city along the railroad right-of-way. This deep gorge is wholly unfit for any building purposes and is used solely as pasture lands. Near the south side of this proposed annexation, running west from the Commerce road, is a gravel road called the Commerce-Cape Girardeau rock road. A short distance from the Commerce road on the north side of this farm road are six country homes. Each of these homes have a small farm acreage and are not built close together. The witnesses testified there was no fire hazard. The owners bought these acreages for establishing country homes. Dr. Williams stated he purchased his acreage 30 years ago and used it for truck patches, growing of chickens and gardening. He testified there was no advantage received from these properties because of insurance rates; that there were no water mains closer than 1700 feet from the corner of

his property to the city pavement. The evidence is that these houses in order to reach the city have to travel east on the farm road to the Commerce road and then north to the city limits. The city streets could not be extended from the city limits to these houses because of the deep gorge just south of the city limits. The city tax rate is $1.50 and plaintiffs' witnesses testified the only benefit they would get would be to pay these taxes. The testimony is that these buildings would receive no fire protection from the city.

This tract extends south across the Commerce Cape Girardeau country road described and takes in purely agricultural lands from a dairy farm across the road. The addition then runs to the west and crosses the country road that leads down towards Fornfelt and takes in a part of another farm. In fact, all of the balance of the land contained in tract I is purely farm land.

Tract II of the proposed annexation is known as "Hillemans Second Addition" to the town of Illmo, was platted in 1905, before Illmo was incorporated, and has 84 lots. 14 homes were built in this area after it was laid out and no new homes have been built there lately. This tract is about a mile from tract I and lies on the northeast side of the south section of Illmo. The testimony as to this tract is that a number of the houses built have many lots connected with them and are used for truck patches and raising chickens. Plaintiffs' testimony is that this addition does not make the boundary more regular and, save the 14 houses there were built in the addition, the balance of the approximately 10 acre addition is farm land. The testimony is not clear whether any of the plaintiffs live in this tract.

In our opinion we will refer to appellant as defendant and to respondents as plaintiffs, the position they occupied in the lower court.

Under points and authorities defendant assigns 13 separate allegations of error alleged to have been committed by the trial court. We much appreciate the diligence of defendant in preparing its brief but we think many of such assignments are not issues in the instant case.

In Gerber v. Schutte Iny. Co., 354 Mo. 1246, 194 S.W.2d 25, 28, the Supreme court stated the aim of our Civil Code as follows:

"  *  *  *  The aim is to determine what are the controversial issues before the trial begins, and limit the trial to them. * * * But the pleadings continue to be of the greatest utility in defining the issues of a case. And it is not to be understood that the petition in stating plaintiff's claim has lost its usefulness as a means of arriving at the primary objectives of the Code. On the contrary, it is to be understood that the petition is to be of the same usefulness as before, or of more usefulness than before, in plainly stating the facts upon which the plaintiff relies as showing that he is entitled to recover. * * *"

The issue involved in the instant case is the reasonableness of the ordinance incorporating the lands of plaintiffs in the extension of the city limits under the ordinance in question.

There is no issue involved in this case as set out in defendant's points and authorities numbered I. The authority of the city council to enact an ordinance extending the city limits of a city of the fourth class and submitting the same to the voters for approval is not questioned.

Under point II defendant refers to constitutional rights. There is no constitutional question in this case.

Under point III, and the various subsections thereof, defendant raises the only issue in the case, that is, did the city, in extending the city limits, exercise reasonable "judgment and discretion" or does the evidence show beyond the realm of debate that there was no need or reasonable cause therefor?

All other allegations of error in defendant's brief are without merit.

Under section 79.020 RSMo 1949, V.A.M.S., it is provided that the mayor and board of aldermen of a city of the fourth class, with the consent of the majority of the legal voters, voting at election therefor, shall have power to extend the limit of the city over territory adjacent thereto, in such a manner as in their judgment and discretion may redound to the benefit of the city.

In Algonquin Golf Club v. City of Glendale, 230 Mo.App. 951, 81 S.W.2d 354, 358, the law is stated:

"Ordinarily this discretion thus vested will not be interfered with by the courts unless there has been an abuse of such discretion and, unless a clear case of abuse of discretion has been made, the courts are not authorized to interfere by holding the ordinances unreasonable, and it is the general holding of the courts that where a doubt exists as to the reasonableness of an ordinance extending city limits the doubt should be resolved in favor of the ordinance. * * *

"In Vestal v. Little Rock, 54 Ark. 321, 329, 15 S.W. 891, 892, 16 S.W. 291, 11 L.R.A. 778, a well-considered case, the correct rule in respect to annexation, as that court interpreted the drift of authorities, is set out as follows:

" 'That city limits may reasonably and properly be extended so as to take in contiguous lands (1) when they are platted and held for sale or use as town lots; (2) whether platted or not, if they are held to be brought on the market, and sold as town property, when they reach a value corresponding with the views of the owner; (3) when they furnish the abode for a densely settled community, or represent the actual growth of the town beyond its legal boundary; (4) when they are needed for any proper town purpose, as for the extension of its streets, or sewer, gas, or water system, or to supply places for the abode or business of its residents, or for the extension of needed police regulation; and (5) when they are valuable by reason of their adaptability for prospective town uses. * * *' "

On page 359 of 81 S.W.2d of this opinion the court lays down the law that when an ordinance is passed by a majority of the legal voters of a city in favor of annexation, a prima facie case in favor of the reasonableness of the ordinance is made and the burden is not on the city to prove the reasonableness, but rests on the plaintiff to prove its unreasonableness. (See cases cited.)

Boals v. Garden City, Mo.App., 50 S.W. 2d 179, 181, states the law that the city has a right to extend its limits in such a manner as in their judgment and discretion may redound to the benefit of the city but that it does not confer unbridled authority, but calls for the exercise of reasonable " 'judgment and discretion.' " The court made this statement:

" * * * When the municipal authorities desire to bring in added territory, and seek to subject it to the burden of taxation, there must be some reasonable call or demand for the use of the territory to supply something desirable and necessary for community welfare. * * *

" * * * The corollary of this rule must also be true that, when it appears that an ordinance extending the town limits has been enacted under circumstances which show beyond the realm of debate that there was no need or reasonable cause therefor, then the exercise of such power is not characterized by judgment and discretion, but by unreasonable and arbitrary conduct, and will be declared to be ineffective. The mere desire to increase revenue by subjecting additional property to taxation or the urge to look upon an amplified municipal horizon do not supply the requisite bases for the extension of town limits and the exercise of municipal authority over foreign territory and its people. * * *"

Ozier v. City of Sheldon, Mo.App., 1949, 218 S.W.2d 133, 137, states the law:

"The general rule is that such discretionary prerogative of the city council is presumed to have been reasonably exercised. But a rule equally well settled is that the reasonableness of an ordinance is

a subject of judicial inquiry. State ex rel. [Musser] v. Birch, 186 Mo. 205, 219, 85 S. W. 361."

In this case the court cites State ex inf. Major v. Kansas City, 233 Mo. 162, 213, 134 S.W. 1007, 1022, wherein the Supreme Court approved the consideration of the following factors in determining the reasonableness of an application for annexation. We will not set out these factors because they are in the exact words as the factors set out in the Arkansas case herein, with the added exception "but the mere fact that their value is enchanced by reason of their nearness to the corporation would not give ground for their annexation, if it did not appear that such value was enhanced on account of their adaptability to town use."

On page 137, of 218 S.W.2d the court makes this statement: " 'We conclude, further, that city limits should not be so extended as to take in contiguous lands (1) when they are used only for purposes of agriculture or horticulture, and are valuable on account of such use; (2) when they are vacant and do not derive special value from their adaptability for city uses'.

"The court in that case further approved the following factors in determining the reasonableness of city annexation of territory:

" '(a) Annexed territory has advantages of city;

." '(b) will make limits regular;

" '(c) secures uniform grade and alignment of streets in added territory;

" '(d) required by public convenience and health;

" '(e) necessary for enforcement of police ordinances;

" '(f) necessary to foster growth and prosperity of city;

" '(g) necessary for extension of gas, water, sewer, street, or police systems;

" '(h) more adequate school facilities.' "

The court held that the reasonableness of the territorial expansion of respondent should not be approached with any narrow or restricted view of its need but that it should be considered broadly and in a manner commensurate with respondent's history, its present necessities, and promise of future greatness.

In Mauzy v. City of Pagedale, Mo.App., 260 S.W.2d 860, 864, the St. Louis Court of Appeals stated:

"In fact, there can be no hard and fast rule laid down for determining the reasonableness of a proposed extension; and a case of reasonableness is made when it appears that the land annexed is so situated as to be adapted to urban purposes, and as to be necessary or convenient to a proper exercise of the city government, even though a portion of the land may be as yet undeveloped or in use for agricultural pursuits."

This court in Arbyrd Compress Co. v. City of Arbyrd, Mo.App., 246 S.W.2d 104, 109 to 114, inclusive, reviewed practically all of the cases in this state relating to the annexation of territory.

Following the law as declared, we hold that the burden is upon plaintiffs, who assert the invalidity of the extension ordinance to make a clear case of abuse of discretion and this court is not authorized to interfere by holding the ordinance unreasonable where doubt exists as to its reasonableness and if there is doubt it should be resolved in favor of the ordinance. Algonquin Golf Club v. City of Glendale, supra.

The law is that such discretionary prerogative of the city council is presumed to have been reasonably exercised but a rule equally well settled is that the reasonableness of an ordinance is a subject of judicial inquiry.

In the instant case the extension covers two separate and distinct tracts of land.

Tract I contains 183 acres of unplatted land which adjoins the city limits of Illmo on the south and west side thereof. Con-

sidering the evidence as to this tract and applying the law as has been expounded by our courts, we believe the evidence falls short of the necessary elements required by law for the reasonable extension of defendant's corporate limits as provided in the ordinance.

The evidence shows that the lands taken in this tract are unplatted, not offered on the market as town lots and not particularly adapted to prospective municipal use or valuable as such, and shows that they are not needed for or would furnish necessary abode for a densely settled community which has outgrown its boundaries, or for the extension of health or police regulation; that the lands so taken are not needed for sewer, gas or water projects, business enterprise or residential development or for extension of streets or alleys nor will it make the corporate limits more regular or furnish more adequate school or other facilities.

The evidence is overwhelming that no substantial municipal advantages will be afforded to the property to be taken; save six small tracts of land, in the southeast corner on the Commerce road used as country homes and gardening and chicken raising, this tract is presently adapted to and used for agricultural or horticultural pursuits and is not particularly adapted to municipal use; that the same is not needed by the city nor necessary for any municipal project, enterprise or improvement; that there are within the city's corporate limits ample unimproved city lots available for both business and residential purposes.

Defendant admits in its brief that there is much undeveloped and unused vacant property, both platted and unplatted within the corporate limits; that the city is on the decline as to growth. The evidence shows that for the last 10 years the population has only increased 23 and that the growth for the past 30 years has been practically nothing; that many business buildings have disappeared. There is no evidence that the city will need in the near future additional land for any needed developments. The evidence shows that the extension of the city limits by the addition of tract I will not make the boundary lines more regular; that this addition will give no added school facilities because this is a consolidated school district, which not only contains the proposed added extension in question but also the city of Fornfelt, and that such extension is not necessary to acquire this land if needed. The evidence shows that the owners of the property in the annexed territory would acquire no material advantages. They would, however, be subjected to city taxes, which would lessen the value of their property. The city would acquire no benefit excepting the tax monies derived from such addition.

As to tract I we affirm the judgment of the trial court.

We, however, are unable to find from the evidence that the extension as to the 10 acre tract on the east side of the town is unreasonable and oppressive as alleged in plaintiffs' petition.

Judgment as to tract II reversed and judgment as to this tract entered for defendant.

STONE and RUARK, JJ., concur.