260 S.W.2d 860 (1953)
MAUZY et al.
v.
CITY OF PAGEDALE.
No. 28642.
St. Louis Court of Appeals. Missouri.
September 15, 1953.
*861 Forrest Boecker, Clayton, for appellants.
Hugo M. Walther, St. Louis, for respondent.
BENNICK, Presiding Judge.
This is a suit in equity brought by some 14 plaintiffs, one of whom allegedly represents a class of approximately 100 similarly situated persons, to void an extension of the limits of defendant, City of Pagedale, a city of the fourth class existing in St. Louis County, Missouri, and to enjoin the city from exercising any municipal authority over the annexed territory in which the plaintiffs reside, own tracts of land, or have their businesses as the case may be.
The court rendered a decree in favor of defendant city, with the direction that plaintiffs' petition be dismissed. Plaintiffs, by proper successive steps, have caused the case to be transferred to this court for our review.
We would assume that the City of Pagedale derived its name from the fact that it was originally formed from territory lying both north and south of Page Avenue, which cuts across it from east to west.
Roughly speaking, defendant city, as originally laid out, lay immediately west of Wellston, and extended north from the city limits of University City to the right of way of the Keokuk Electric Power Line, which runs east and west between Pennsylvania *862 Avenue on the west and the tracks of the Wabash Railroad Company on the east.
The annexed territory lies immediately north of the city as originally formed, and to the east of Pennsylvania Avenue. At its easternmost limits it includes a small amount of territory lying to the east of the Wabash tracks, and it extends north to the grounds of St. Vincent Sanitarium. An important landmark is St. Charles Rock Road, which bisects the annexed territory from northwest to southeast.
In view of the general familiarity with the development of St. Louis County, the above description, though purposely made indefinite, is nevertheless sufficient for an understanding of the matters involved in this proceeding.
The issues in the case are those which are customarily present in cases of this character, and will be reflected in the evidence for the respective parties.
The City of Pagedale was incorporated on February 14, 1950. The election upon the proposition of extending the city limits was held on November 13, 1951, a year and nine months after the city had come into existence. The instant suit to invalidate the annexation was instituted on January 10, 1952.
According to the 1950 census, there were 3,826 inhabitants of the territory embraced within the original limits of the city. A census taken by one of the city officials in February, 1952, three months after the annexation, disclosed that there were 992 people residing within the annexed area.
Plaintiffs' evidence was to the effect that a considerable portion of the annexed area was occupied by business establishments of one sort and another, which, in many cases, had existed long prior to the annexation and did not owe their location to their proximity to the territory originally incorporated as the City of Pagedale. Particularly was this true of the type of businesses located along St. Charles Rock Road, which is a principal highway east and west.
While one of the plaintiffs owned 13 acres of land in the annexed area, the land was used exclusively for business purposes, and was available for further business development. The only agricultural activity was on a tract of eight acres adjacent to the St. Vincent Sanitarium grounds, the east half of which was then in process of sale to a builder. The territory west of this tract was already partially utilized for residential purposes.
So far as city services were concerned, plaintiffs' evidence showed that prior to the annexation the fire protection for the area in question had come from a Wellston volunteer fire department. However one of the plaintiffs testified that such service had been discontinued a couple of years before the trial, which would have meant that it had been discontinued for perhaps a year and a half before the annexation. The same witness testified that the city had not installed any fire hydrants in his vicinity since the annexation.
Prior to the annexation the police protection for the area in question had been restricted to deputy sheriffs of St. Louis County, who were subject to call at the sheriff's office, and were to be seen from time to time, particularly in the business portions of the district. Along St. Charles Rock Road there was added protection from the members of the State Highway Patrol. The general tenor of plaintiffs' evidence was that the annexation had not served to improve the police protection over what it had been before.
Under the old arrangement the streets and alleys had been maintained by the St. Louis County Highway Department. One of the plaintiffs admitted that since the annexation the city had repaired the streets, and had also made repairs to the alley behind his home. After the annexation the collection of garbage and rubbish had been taken over by the city, whereas prior to annexation it had been the subject of individual private contract. Such sewers as existed had been built and maintained at priate expense. In one section along Engelholm Avenue, one block north of St.
*863 Charles Rock Road, the matter of sewers, lights, and the like had been under the supervision of the Engelholm Improvement Association, which served an area of 35 or 40 homes. Light standards had been installed, but no lightsa matter explained in defendant's evidence.
One of the plaintiffs knew of no subdividing since the city had annexed the territory. Another of the plaintiffs, who operated a small business on St. Charles Rock Road, acknowledged that his chief objection to the annexation was the fact that he would be compelled to acquire a city license to operate his business, but without what he considered to be any corresponding benefit.
Defendant's evidence disclosed that there was a continuous increase in the development of the entire area for purely business purposes, and that a high school and a church were to be erected by a religious group in the southwestern section of the addition. One of the principal plants was being erected in the north end of the original city limits by Lever Brothers for the manufacture of their soap products. The total cost of the plant's construction was to be $300,000 and it was to employ 800 people. All told, from April, 1950, to the time of the trial in May, 1952, there had been 100 permits issued by the city for the erection of industrial buildings of the total value of $1,805,447. In the same period the city had issued 50 residential permits and 10 commercial permits.
The original territory of the city was divided into two wards, and the annexed area now comprises a third ward from which two aldermen have been elected. The city has its complete municipal organization with a mayor, who is also the police judge; a marshal, who serves as chief of police; a collector; a building commissioner; a street commissioner; and a board of aldermen.
In its police department the city has five paid police officers in addition to the chief, and three traffic men to assist at school crossings. Of the five police officers, four are full-time employees. The city owns one police car, which has a three-way hookup with the county sheriff's patrol. The car is in service 24 hours a day, and in that period makes two or three complete trips through all the streets including those in the annexed territory. The number of police has not been increased since the annexation, but the evidence tended strongly to show an improvement in the character of the police protection afforded the inhabitants of the annexed area. So long as the area was dependent for its protection upon the sheriff's office, there could of necessity be no regular patrols, and none whatever on the side streets, but since the annexation the Pagedale police patrol the area regularly both day and night. The improvement in police protection was especially emphasized by residents of the annexed area, one of whom testified to an occasion when the police had responded in only three minutes after she had put in her call.
The city has a paid full-time street department of two men in addition to the street commissioner, who also devotes his whole time to the job. Since the annexation the street department has made repairs over the entire area. The streets have been patched; barricades have been erected at dangerous points; and the alleys have been "rocked", by which is meant that crushed rock has been hauled and spread over the alleys. During the wintry weather salt has been sprinkled on the streets to melt the ice. It was admitted that up to the time of the trial the only repairs to the streets had consisted of patchwork, but the mayor testified that the city had only recently contracted for substantial street improvements. A contract had been entered into with Union Electric for street lights in the annexed area, but performance had been withheld pending the determination of this litigation. Street signs or markers had been purchased for all the streets in the new area, and were awaiting installation.
The existing sewers had been repaired and were being maintained by the city after the annexation. There had been consultation between the city officials and the St. Louis County Water Company about *864 the installation of fire plugs, but the company had refused to act until the present suit was disposed of. Garbage and rubbish were now being collected by the city three times a week instead of upon the irregular basis that had formerly obtained.
This court has very recently had occasion to consider the question of when and under what conditions a municipality will be permitted to annex adjacent territory; and for the law to govern this case we need go no further than to the opinion prepared by Judge Anderson in Dressel v. City of Crestwood, Mo.App., 257 S.W.2d 236. In that opinion the law relating to the extension of municipal limits is not only stated clearly and comprehensively, but in such a way as to be strikingly pertinent to the facts of the case at bar, which, though basically similar, would actually seem to present an even stronger case for annexation than those in Dressel v. City of Crestwood.
The authority under which a city of the fourth class acts in annexing adjacent territory is derived from Section 79.020 RSMo 1949, V.A.M.S., which provides that the mayor and board of aldermen of such city, with the consent of a majority of the legal voters of such city voting at an election therefor, shall have the power to extend the limits of the city over such territory in such manner as in their judgment and discretion may redound to the benefit of the city. The proceedings in this case were of course all prior to and unaffected by the new act of the Sixty-seventh General Assembly, which requires a city undertaking to annex unincorporated territory to first institute a class action in the circuit court of the county where the territory lies for a declaratory judgment authorizing such annexation.
It obviously follows, therefore, that inasmuch as the Legislature has thus expressly vested the city officials with a discretion in determining the necessity and reasonableness of the annexation of adjacent territory, and in a case where the new act is not involved, the courts will only interfere to correct an abuse of such discretion, so that where there is a substantial reason for the annexation, even though reasonable men might fairly differ about its necessity, the decision of the city officials is none the less to be upheld. Furthermore, since it is within the power of a city to provide by ordinance for the extension of its limits, an ordinance enacted pursuant to such power is presumed to be reasonable and valid in the absence of any necessity for prior judicial authorization; and the burden of proof to the contrary is upon the one who asserts its invalidity.
In fact, there can be no hard and fast rule laid down for determining the reasonableness of a proposed extension; and a case of reasonableness is made when it appears that the land annexed is so situated as to be adapted to urban purposes, and as to be necessary or convenient to a proper exercise of the city government, even though a portion of the land may be as yet undeveloped or in use for agricultural pursuits.
In support of their insistence that the annexation was unreasonable, plaintiffs argue that whereas any necessity for the extension of city boundaries should be satisfied by the acquisition of territory which is relatively undeveloped rather than fully matured, the territory in question dates its development to a time far prior to the incorporation of the City of Pagedale, which, as already pointed out, had taken place only a year and nine months before the annexation. Moreover they suggest that if there was need for a larger expanse of territory in November, 1951, the date of the annexation, the same need must have been largely present in February, 1950, when the incorporation took place; and that the action of the city in thus undertaking to extend its boundaries so shortly after its incorporation amounted to a species of entrapment of the residents of the annexed area, who had been lulled into a false sense of security when the city was organized without apparent reference to their territory, but who might have been expected to oppose the incorporation if their territory had been included at the outset.
*865 And not only do plaintiffs argue that both the residential and the industrial areas of the annexed territory had been built up before the annexation, but they also insist that such growth as had taken place was actually not attributable to the area's proximity to the City of Pagedale. Instead they assert that the development throughout the area had derived its immediate impetus from its nearness to Wellston, and its underlying stimulus from its proximity to the City of St. Louis, particularly as regards the commercial and industrial establishments, large and small, lying along St. Charles Rock Road as well as along the line of the Wabash Railroad Company. In short, they deny the existence of any close community ties between their territory and the City of Pagedale, and suggest that municipalities other than defendant city have far more tenable claims to their territory than any which it might conceivably possess.
Still other objections are that there has been no such growth within the City of Pagedale since its incorporation as to necessitate the present expansion of its limits; that much of the territory annexed, by reason of its use or adaptability, could not in any event provide any available housing facilities; and that so far as the annexed territory is itself concerned, it already possesses all those types of services associated with municipal organization, and would not stand to benefit by the annexation.
In questioning the reasonableness of the annexation, it is no decisive factor that the annexed territory may be primarily indebted to the City of St. Louis rather than to the City of Pagedale for its development into an urban community and for the location of the larger industrial plants within its borders. The same thing could as well be said of all the other communities within the metropolitan area of the City of St. Louis; and perhaps the frank truth of the matter is that both the original territory and the newly annexed territory of the City of Pagedale owe their development to such common source. But instead of proving that the annexation was unreasonable, this circumstance actually supports the idea of a community of interest, which much of the evidence tends to disclose. For instance, both areas are in the same school district; the types of residences and businesses are largely the same in both; and several principal thoroughfares such as Pennsylvania Avenue, Kingsland Avenue, and Ferguson Avenue transverse both sections north and south and serve to unite them into a common community. In view of the location of the two areas, the one to the immediate north of the other, no such corresponding purpose could be expected from east and west thoroughfares such as St. Charles Rock Road and Page Avenue, each of which is necessarily confined to a separate portion of the entire territory.
There is no dispute about the fact that the annexed territory is urban in character save for the tract of eight acres in the extreme north end of the district, the east half of which has already been sold to a builder, and the west half of which borders on an area given over to residential construction. From a geographical standpoint the expansion of defendant city will be most naturally and logically towards the north, and even though it may not as yet have completely outgrown its original limits, it should not be denied the present right to plan ahead and provide for its development for several years to come. But a further reason for the annexation as persuasive as any other is the benefit that has already been derived, and will eventually be derived in even greater measure, by the annexed territory itself through the acquisition of more adequate police protection, street lighting, sewage disposal, garbage and rubbish collection, and maintenance of the streets and alleys. The testimony of residents of the annexed area showed that in the short period of annexation there had been a substantial improvement in such municipal services; and other evidence will be recalled disclosing that arrangements had been made by the city for still greater improvements, which could not be put into effect until the legality of the annexation had been finally determined.
*866 It is thus to be seen that regardless of the sincerity of plaintiffs' objections, there are undoubtedly most substantial considerations to support the action of defendant city. However it is no part of our duty to go the length of actually deciding which of the respective contentions outweighs the other regarding the need for the annexation, but instead, as we have previously pointed out, it is enough for us merely to find that there was a sound basis (even though subject to a difference of opinion) from which reasonable men might conclude, as both the officials and the electorate did, that the annexation would redound to the benefit of the city. Having determined that the record affords such a basis, it necessarily follows that plaintiffs have failed to sustain their burden of showing lack of lawful reason; and the court therefore ruled properly in refusing to interfere with the action taken by defendant city.
The judgment rendered by the circuit court should be affirmed; and it is so ordered.
ANDERSON, J., and HOLMAN, Special Judge, concur.