**CITY OF ST. ANN, a municipal corporation,
Respondent,**

v.

**Lewis BUSCHARD, Appellant.**

No. 29502.

St. Louis Court of Appeals.

Missouri.

Feb. 28, 1957.

Motion for Rehearing or for Transfer
to Supreme Court Denied
March 29, 1957.

Flynn & Parker, Norman C. Parker, St. Louis, for appellant.

Walter G. Treanor, Sp. Counsel, St. Louis, Paul Brackman, Brackman, Oetting & Brackman, Clayton, for respondent.

ELMO B. HUNTER, Special Judge.

This is an action by the City of St. Ann in St. Louis County, as plaintiff, for a declaratory judgment authorizing it to annex an adjoining area of approximately 750 acres also located in St. Louis County. The only specifically named defendant, Lewis Buschard, is a resident of the area sought to be annexed and, as such, is alleged to be representative of all its inhabitants. Plaintiff City brings this suit pursuant to the so-called Sawyer Act passed by the 67th General Assembly, Laws 1953, page 309, Section 71.015 RSMo 1949, V.A. M.S., which provides that before a city may proceed to annex any area otherwise authorized by law, it must file an action in the Circuit Court of the County in which such unincorporated area is situated praying for a declaratory judgment authorizing such annexation. According to the Sawyer Act: "The petition in such action shall state facts showing;

"1. The area to be annexed;

"2. That such annexation is reasonable and necessary to the proper development of said city; and

"3. The ability of said city to furnish normal municipal services of said city to said unincorporated area within a reasonable time after said annexation is to become effective. Such action shall be a class action against the inhabitants of such unincorporated area under the provisions of Section 507.070 RSMo."

Plaintiff's petition contains the requisite allegations of fact, and the trial court held that its evidence adduced in support thereof satisfactorily established the facts alleged and satisfied the requirements of the Sawyer Act. It entered its judgment authorizing the annexation. In proper time defendant filed his motion for new trial,

and when it was overruled perfected this appeal.

On this appeal defendant raises and presents only two contentions of error. He contends the trial court erred in authorizing the proposed annexation because the evidence does not support the trial court's finding (1) that the annexation is reasonable and necessary to the proper development of the City of St. Ann; and (2) that the City of St. Ann has the ability to furnish normal municipal services to the unincorporated area within a reasonable time.

At the trial of the case in the Circuit Court plaintiff adduced evidence to the following effect: The City of St. Ann was incorporated April 7, 1948, as a city of the fourth class. It has undergone two previous annexations. To its north, east and south, it is fairly well surrounded by other incorporated areas. It encompasses an area of about 1,000 acres and has a population of approximately 12,000 people. It lies about seven or eight miles northwest of the City of St. Louis. The assessed valuation of all the property of St. Ann is $6,841,959. Its tax rate is 60¢ per $100. Its budget for the current year (1955) is $62,000, and its anticipated income for the year is $58,000. It has a substantial surplus from prior years, thus enabling it to budget more than its actual income for the particular year. There was approximately $159,000 of the city's money in the bank at the close of business about a year prior to this litigation. Approximately $60,000 a year is required to operate the City of St. Ann in its present size. During January and February, 1954, the office of the Missouri State Auditor made an audit of the city's finances. According to the report of the State Auditor's Office, the city was in a sound and favorable financial condition. Its several funds had shown a substantial increase since the incorporation of the city in April, 1948. The State Auditor explains by reporting that "this condition was principally the result of the rapid growth of the city since the date of incorporation as a fourth class city."

Numerous residential developments have taken place in the City of St. Ann in recent years, and it is now almost entirely developed. It has only two small areas and a few lots that have not been improved. For all practical purposes there is no appreciable amount of available land in the city to enable it to grow larger. It has experienced and continues to experience considerable commercial development. It has about 75 businesses in the city, which is about what the average city of its size ordinarily has. Seven small businesses and one large clothing company are new businesses currently coming into St. Ann.

As to its city property, government and employees, St. Ann owns a new modern city hall. The city is governed by a mayor and a board of aldermen. It has a municipal court, a municipal judge, and a city attorney. Its full time employees include a city clerk, deputy clerk, treasurer and custodian. It has a police board composed of four citizens and a member of the board of aldermen who acts as its chairman. The police department consists of a full time police chief, two full time policemen, two other police officers who work a week on and a week off duty, and on their "off duty week" ride two nights on duty in a police car, and twelve officers who are on call but who have other jobs. There are also 24 auxiliary police officers being trained under the civilian defense program of the St. Louis area. They are subject to duty call at any time. In the near future the city will be ready to start 17 auxiliary policemen in training. The police department has several fully equipped police cars owned by the City of St. Ann. It also owns nine radio receivers that are in the private cars of its police officers. These officers use their private cars when on duty for traffic patrol. There is a central dispatcher with the police department but no city owned sending equipment. The St. Louis County's Police Department

by contract provides the sending service through its equipment. Until July 1, 1955, the proposed-to-be-annexed area was policed by the sheriff and constable of St. Louis County. Since that date it has been policed by the St. Louis County Metropolitan Police Department. In the past St. Ann's Police Department has provided frequent emergency police service to the proposed-to-be-annexed area. Although the county's police undertakes to occasionally patrol the highways within the proposed-to-be-annexed area, the St. Ann police frequently arrive first on the scene of traffic accidents that occur there. Currently the St. Ann police are handling from 30 percent to 50 percent of all of the calls in a part of that area received by the county's police authorities. This is a courtesy service to the county's police authorities and to the proposed-to-be-incorporated area. The Police Board and Board of Aldermen of St. Ann are aware of the need for police protection in this area, and have gone on record that they will make whatever increases in personnel and equipment are necessary to police that area if and when annexed. However, it is the present opinion of the Chief of Police that there is now sufficient personnel to do that policing, particularly if one additional full time police officer is added to the Police Department. This additional officer already has been requested of the Board of Police Commissioners of St. Ann.

The City of St. Ann is served by the St. Louis Water Company, as is the proposed-to-be-annexed area. The cost of water to residents of St. Ann is reduced under a special contract between it and the city. These benefits would apply to any area annexed by the city.

St. Ann contracts with a private hauler to make pick-ups on garbage and trash three times a week at a cost to its residents of $16 per year.

St. Ann does not have a separate street department, having found it cheaper to contract for their repair on a cost-plus basis with a private contractor.

St. Ann does have a building and zoning ordinance containing provisions regulating such things as set back lines, building heights, and lot requirements. It has a building commissioner who checks every new building. As a result property values in St. Ann are high and stable.

There is no full time city engineer but there is a part time one who is paid for any special service he is requested to render by the city.

St. Ann does not maintain a fire department. It is served by a statutory fire district as is the proposed-to-be-annexed area. The proposed annexation would not affect the fire protection of that area, other than to cause a survey (as provided by St. Ann's water contract), and if there are not enough fire plugs in the proposed-to-be-annexed area, the water company would be compelled to install them at no charge.

Three parks are available to the residents of St. Ann. These parks have baseball facilities, picnic areas, rest rooms and playground areas. There is a city maintained planned playground program for all of the children in the community.

St. Ann has a health commissioner. It has its own sewer district and owns and operates its own sewer plant. However, there is now a metropolitan sewer district, and when a new subdivision or home in the proposed-to-be-annexed area comes in it must be referred to the metropolitan sewer district and take its service from that district. This arrangement would not be changed by the proposed annexation. There is some indication that the metropolitan sewer district will eventually take over and service the St. Ann sewer system.

The City of St. Ann is divided into four wards, one of which is disproportionately large. The city has a plan to remedy this inequality and to provide equal representation for the area to be annexed.

Turning to the proposed-to-be-annexed area, its approximately 750 acres contain a population of about 2,000 people. It is bisected by two United States highways of four traffic lanes each. These two highways are St. Charles rock road, which runs east and west, and Lindberg Boulevard, which runs approximately north and south. The intersection of these two highways, which is approximately in the center of the area to be annexed, is a two level intersection with clover-leaf approaches. The area has 24 streets in satisfactory condition and an additional 13 streets that are not up to county specifications. This proposed-to-be-annexed area is largely residential. There is no industry in the area. It contains 541 residential houses. Numerous others are under construction. At least 60 percent to 70 percent of these houses, basically five or six room ranch type bungelows with up to a quarter acre of ground, are equivalent in structure, upkeep and maintenance to St. Ann's houses. Thirty-six small businesses are established within the area, mostly along St. Charles rock road. They are contiguous to the businesses of St. Ann.

There are some vacant areas in the proposed-to-be-annexed area. There is a total of 148 acres that might be classified as farm-type land, the largest of such tracts being two 35-acre fields. The remainder are much smaller fields.

The public high school serving the residents of St. Ann is located in the proposed-to-be-annexed area. Some of the streets of St. Ann run into the proposed-to-be-annexed area, facilitating police control of the area and enabling better control over the streets that enter and leave the area.

As to evidence adduced on behalf of defendant, Lewis Buschard testified he was in the insurance and real estate business and resided in the proposed-to-be-annexed area. He was opposed to the annexation. It would not, in his opinion, have the effect of raising real estate values in it. He knew of no service St. Ann could render that the area was not already getting from the county government.

At the close of the testimony, plaintiff and defendant, through their respective counsel, stipulated and agreed as follows: St. Louis County has a public works department staffed with full time paid people who perform building inspection services, including building inspection, plumbing and electrical inspection. The County of St. Louis, a first-class county, has an established planning and zoning commission, and a full time paid executive director with a full time staff, administering a zoning ordinance which is enforced in the proposed annexed territory. St. Louis County also maintains a health department with a full time paid staff to perform the functions that a county of the first class has power to perform. There is a county library district which serves the unincorporated territory. Pursuant to amendment to the Home Rule Charter of St. Louis County there is in operation in the unincorporated area, a police department, which includes the proposed annexed territory. St. Louis County maintains a highway department, headed by an elected official highway engineer who has a full time paid staff which maintains services for roads in this proposed annexed territory. Also the Pattonville statutory fire district serves some portions of this proposed-to-be-annexed area.

■ It is our duty in this declaratory judgment action to review the case de novo as to all matters properly before us and to reach our own conclusions with respect to the law and the facts. In so doing, we consider, weigh and evaluate all of the competent evidence, including evidence that has been rejected by the trial court, if admissible and preserved in the record, and we disregard evidence that has been improperly admitted. We accord due deference to the trial court's findings, particularly where the credibility of witnesses who appeared before it is challenged. Section 527.070 RSMo 1949,

V.A.M.S.; Matthews v. McVay, Mo.App., 234 S.W.2d 983; Berghorn v. Reorganized School District No. 8, Franklin County, 364 Mo. 121, 260 S.W.2d 573; St. Louis Housing Authority v. City of St. Louis, En Banc, 361 Mo. 1170, 239 S.W. 2d 289; Deacon v. City of Ladue, Mo. App., 294 S.W.2d 616.

So far as we have been able to determine, this is the first case to reach an Appellate Court in this state necessitating a construction and application of the Sawyer Act to a proposed annexation of territory by a municipal corporation subject to the provisions of that Act. McConnell v. City of Kansas City, Mo.Sup., 282 S.W.2d 518; Mauzy v. City of Pagedale, Mo.App., 260 S.W.2d 860. Prior to the enactment of the Sawyer Act landowners who were affected by an annexation and who were opposed to it had the burden of bringing an appropriate equitable action to have the annexing ordinance declared void ordinarily for want of reasonableness. Dressel v. City of Crestwood, Mo.App., 257 S.W.2d 236; Jones v. City of Ferguson, Mo.App., 164 S.W.2d 112; State ex inf. Major v. Kansas City, 233 Mo. 162, 134 S.W. 1007. Further, it then being within the statutory power of the municipal legislative body to provide by ordinance for the proposed extension of the city's limits, the annexing ordinance was presumed to be reasonable and valid until that presumption was overthrown by competent evidence to the contrary. Dressel v. City of Crestwood, supra, 257 S.W.2d loc. cit. 248; Ozier v. City of Sheldon, Mo.App., 218 S.W.2d 133; State ex inf. Mallett ex rel. Womack v. City of Joplin, 332 Mo. 1193, 62 S.W.2d 393. And the burden of proof rested squarely on the complaining property owners. Williams v. City of Illmo, Mo.App., 279 S.W.2d 196; Mauzy v. City of Pagedale, supra; Seifert v. City of Poplar Bluff, Mo.App., 112 S. W.2d 93. Also through the years prior to the enactment of the Sawyer Act the Appellate Courts of this state have enumerated certain considerations and so-called tests to be applied to the particular facts of the case to assist in determining the reasonableness of the challenged expansion. As stated in Dressel v. City of Crestwood, supra, 257 S.W.2d loc. cit. 248–249: " 'The test to be applied in determining the reasonableness of a proposed expansion of city limits must obviously be largely a flexible one. However, the appellate courts, in the disposition of cases of this character, have made some general observations which are highly pertinent to the matter at hand, to the effect that existing boundaries may properly be extended so as to take in contiguous lands: (1) When they are platted, and held for sale as town lots; (2) whether platted or not, if they are subject to be brought on the market, and sold as town property when they reach a value corresponding with the views of the owners; (3) when they furnish the abode for a densely settled community, or represent the actual growth of the municipality beyond its legal limits; (4) when they are needed for any proper town purposes, as for the extension of streets, sewer, gas, or water systems, or to supply places for the abode or business of its residents, or for the extension of needed police regulation; and (5) when their value is enhanced by reason of their adaptability for prospective town uses.' " * * * "It is not necessary that all of the conditions which we have named as proper to be considered in determining the question of reasonableness should be present before an annexation will be declared valid. On the contrary, a case of reasonableness is made where it appears that the land annexed is so situated as to be adaptable to urban purposes, and necessary or convenient to a reasonable exercise of the city government. And this is so even though a part of the land is vacant, or a small portion thereof is used for agricultural purposes, [citations]. * * *"

Again in the same opinion, 257 S.W.2d loc. cit. 249: "It has been held that the extension of a city's limits should be in-

frequent and, for that reason, the city should be permitted to look ahead and provide for the development for several years to come. * * *"

Other decisions prior to the enactment of the Sawyer Act enumerating these tests to determine reasonableness in somewhat the same language are: State ex inf. Taylor ex rel. Kansas City v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762; Williams v. City of Illmo, supra; Arbyrd Compress Co. v. City of Arbyrd, Mo.App., 246 S.W.2d 104; Mauzy v. City of Pagedale, Mo.App., supra; State ex inf. Major, Atty. Gen. v. Kansas City, supra; Jones v. City of Ferguson, supra; Stoltman v. City of Clayton, 205 Mo.App. 568, 226 S.W. 315; Ozier v. City of Sheldon, supra; Algonquin Golf Club v. City of Glendale, 230 Mo.App. 951, 81 S.W.2d 354; State ex inf. Mallett ex rel. Womack v. City of Joplin, supra; Seifert v. City of Poplar Bluff, supra.

■ The direct effect of the Sawyer Act is to place the burden on the municipal corporation not only to file the appropriate petition for a declaratory judgment but also to carry the burden of proof of showing (1) the area to be annexed; (2) that such annexation is reasonable and necessary to the proper development of said city; and (3) the ability of said city to furnish normal municipal services of said city to the unincorporated area within a reasonable time after said annexation is to become effective. For it is clear that the legislature intended that the necessary allegations in the petition be proved by the municipality as well as merely alleged by it in the petition. This burden of proof must be fully met and satisfied by the city as a condition precedent to its securing the necessary court authorization of the proposed annexation.

■ The question arises as to whether or not the considerations and tests previously announced by our Appellate Courts concerning the reasonableness of an attempted annexation are to be continued to be used to assist in determining under the Sawyer Act "that such annexation is reasonable and necessary to the proper development of said city." It is our view that they remain as valuable aids. Cf. McConnell v. City of Kansas City, Mo.Sup., 282 S.W.2d 518.

With the statutory requirements of the Sawyer Act in mind, we have carefully reviewed the evidence properly before us in order to determine whether or not the City of St. Ann has met and satisfied its required burden of proof.

■ The evidence presents the picture of a fairly rapidly growing, well organized municipality that has previously undergone two annexations since its incorporation in April, 1948. Its history of growth and present situation indicates a current need for more land for both residential and business expansion, and this needed land is not available within its present corporate limits. Also there is considerable and convincing evidence that there is a definite need on the part of the City of St. Ann for a more uniform control and administration of the various police, health, zoning and building laws and problems of the two areas which in many instances are interrelated and affect the proper development of the City of St. Ann. These, and other factors that appear from the evidence, have persuaded us that the proposed annexation is reasonable and necessary to the proper development of the City of St. Ann.

Defendant's other contention is that the evidence does not support the trial court's finding that the City of St. Ann has the ability to furnish normal municipal services *of said city* to the unincorporated area within a reasonable time after the annexation is to become effective. In stating this contention, defendant omitted the important words which we have caused to be italicized and which are contained in both the statute and the trial court's findings.

A review of the pertinent evidence discloses that the City of St. Ann is in a sound and favorable financial condition. It has a substantial surplus of money in its treasury from prior years. The city in an ordinance has unequivocally declared that it is willing, able and ready to furnish its normal municipal services to the proposed-to-be-annexed territory within the required time. It has every appearance, financially and otherwise, of being able to extend and furnish its normal municipal services to the now unincorporated area within the required time. In so saying, we are not unmindful that the evidence discloses that certain services are now being furnished to the proposed-to-be-incorporated area by agencies and entities other than the City of St. Ann, and that many of these services will be continued to be so furnished in the event the proposed annexation takes place. However, that does not mean that the City of St. Ann is not able to furnish *its* normal municipal services to the proposed-to-be-annexed area within the required time. The single possible exception relates to the sewer system. St. Ann now has its own system. It is willing to extend its system to the proposed-to-be-annexed area. Apparently (so the evidence indicates) by law the proposed-to-be-annexed area will be required to take that service from a particular statutory sewer district. The evidence also indicates that this same statutory sewer district in the future will take over the operation of the St. Ann sewer system. We do not believe that the legislature intended any such situation as this to prevent an otherwise lawful annexation of needed adjacent land. The law always favors constructions of a statute that will harmonize with reason and which tend to avoid unjust, absurd or unreasonable results. Laclede Gas Co. v. City of St. Louis, 363 Mo. 842, 253 S.W. 2d 832; Kansas City v. Travelers Insurance Co., Mo.App., 284 S.W.2d 874. In any event there appears to be a substantial and sufficient compliance with the requirements of the Sawyer Act.

We feel compelled to mention one other matter inherent in this case which was not mentioned by either party; namely, the class action aspect of the case. The Sawyer Act specifically provides that "Such action shall be a class action against the inhabitants of such unincorporated area under the provisions of Section 507.070, RSMo 1949." A portion of the mentioned section, 507.070, provides: "If persons constituting a class are very numerous or it is impracticable to bring them all before the court, such of them, *one or more, as will fairly insure adequate representation of all* may, on behalf of all, sue or be sued, * * *." (Italics ours.) Further, that section has been supplemented by Supreme Court Rule 3.07, 42 V.A.M.S., which in part provides: "Whenever an action is instituted by *one or more* plaintiffs as representative or representatives of a class or against one or more defendants as representative or representatives of a class, *the petition shall allege such facts as shall show that they or the defendants specifically named and served with process have been fairly chosen and adequately and fairly represent the whole class. The plaintiff shall be required to prove such allegations,* unless all the members of the class have entered their appearance, and it shall not be sufficient to prove such facts by the admission or admissions of the defendants who have entered their appearance." (Emphasis ours.) The requirements of *both* statutory Section 507.070 and Supreme Court Rule 3.07 are mandatory, and not merely technical or directory. Campbell v. Webb, 363 Mo. 1192, 1199, 258 S.W.2d 595, 599. While it is correct that in a given situation one person may be truly representative of the entire class, obviously the larger the number defending the class the more likely, generally, that the representation will be adequate as required. Such things as the importance or value of the selected defendant's (or defendants') interest, whether or not the selected defendant (or defendants) is truly adversary in his interests or rights to be affected, and numerous other consid-

erations have a bearing on the question of whether or not the representation of the class is legally adequate. See Crawford, Class Actions under the Missouri Code, 18 Kansas City L.Rev. 103; Class Actions under the Missouri Code, 3 St.Louis U.L.J. 391; 39 Am.Jur., Parties, Sec. 48, p. 922. In the final analysis the determination of the minimum number, one or more, required in the particular case to insure adequate representation of the class in the particular case before the Court rests ultimately in the sound discretion of the Court. In this regard, each case must be determined upon its own particular facts. As stated by Judge Blair in Hribernik v. Reorganized School District R–3, Mo.App., 276 S.W.2d 596, 599. "They [the requirements established in Supreme Court Rule 3.07] reveal the court's solicitude for the constitutionality of Section 507.070 by requiring that the elements of due process be accorded to all absent persons whom others who sue would bind as a class. Doubtless the rule was formulated and adopted to achieve consistency with the philosophy announced in Hansberry v. Lee, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22, 132 A.L.R. 741, which demonstrates that Art. XIV, U.S.Constitution, forbids suitors to bind members of a class unless it is made apparent by the procedure followed that they fairly and adequately represent that class." Cf. 39 Am.Jur., Parties, Sec. 48, p. 922.

In the instant case the petition contains the required allegations of fact to show that the defendant named and served has been fairly chosen and will adequately and fairly represent the whole class. Plaintiff has the duty of proving those allegations of fact. Without intending to encourage the selection of a sole defendant to represent a class in this type of action, we do hold that upon the record made in this case, defendant, Lewis Buschard, did adequately and fairly represent the class, and that the requirements of Sec. 71.015 and Supreme Court Rule 3.07 have been satisfied.

We have examined all of the authorities cited by both parties to this cause, and find nothing in them inconsistent with the views we have expressed herein. And in accordance with those expressed views we affirm the judgment of the trial court.

It is so ordered.

ANDERSON, P. J., and MATTHES, J., concur.