Martin E. SHEETS, Plaintiff-Respondent

v.

Robert A. THOMANN et al., etc., Defendants.

Robert A. Thomann, William Schneider and Lee H. Nolte, Trustees of Hi-Pointe Subdivision, and William Schneider, Robert A. Thomann, Mercedes Thomann and Lee H. Nolte, as individuals, Defendants-Appellants.

Nos. 30337, 30338.

St. Louis Court of Appeals.

Missouri.

June 21, 1960.

Gentry, Bryant & Sheppard, Arnot L. Sheppard, Martin E. Sheets, Jr., St. Louis, for plaintiff-respondent.

Robert Kratky, Frank Lee, Robert A. Thomann, St. Louis, for defendants-appellants.

BRADY, Commissioner.

This action began its odyssey upon December 30, 1954, when the petition was filed. It was tried in February of 1958, Notice of Appeal was filed on February 25, 1959, and after requests for extension of time and resetting, made by counsel, were granted, the case came on for argument in March of this year. In his petition, the respondent alleged that he was the owner of certain real estate in the subdivision here involved; that the subdivision was created by a trust indenture recorded January 18, 1918, filed in the office of the Recorder of Deeds of both the City of St. Louis and St. Louis County; that the trust indenture restricts the use of many of the lots in the subdivision for various purposes depending upon the lot locations, defines the powers, authority, duties and qualifications of the trustees, provides for the life of the restrictions until January 1, 1950, and further provides for extension of any one or more of the restrictions by written instrument evidencing the consent of the owners of three-fourths of the total number of front feet embraced in the indenture, and containing in effect paragraph 21 of the original trust agreement. That paragraph reads as follows:

"All or any of the foregoing provisions and restrictions may be modified, amended, released or extinguished at any time by written instrument executed, acknowledged and recorded as required by law for instruments affecting Real Estate by the owners of three-fourths of the total number of front feet embraced in this Indenture, and for this purpose the frontage shall be determined as set out in paragraph Third of this Instrument."

The appellants are the trustees of the subdivision, and are also lot owners therein. Attached to the petition was a document entitled, "Deed Modifying and Extending

The Hi-Pointe Subdivision Restrictions" dated October 14, 1959 which·is recorded in the offices of the Recorder of Deeds of both the City of St. Louis and the County of St. Louis. By that document, certain of the purported restrictions found in the original trust indenture are purported to be extended to December 31, 1999, and other restrictions are purportedly modified, others purportedly released, and some restrictions purportedly created. The petition alleges the provisions of this document are void, and assigns as reasons therefor: that it was not executed by the owners of three-fourths of the total number of front feet embraced in the original indenture; that the document, by extinguishing or changing the restrictions as to certain lots and not as to others created "monopoly and inequity"; that the changes as to the use of certain lots for business purposes is conditioned upon the consent of the trustees and 75% of all of the lot owners in Block E of the subdivision, but not as to any other block, and no change upon any such basis is contained in the original trust agreement; that the document attempts to delegate authority to permit the use of certain lots for business purposes to the trustees, and so violated the original trust indenture requiring any extension, modification, release or amendment to be made by the owners of three-fourths of the total number of front feet embraced in the indenture; that the changes in the restrictions are not authorized by the original trust indenture and are therefore void. It was further stated that the original agreement never intended to, and did not, create a first-class residential subdivision, and in connection therewith the plaintiff alleged that the situation immediately in and surrounding the subdivision makes any restrictions upon the use of lots therein unreasonable and inequitable; that by allowing various and sundry lots to be used for years past for business purposes regardless of the restrictions, the appellants and other residents of the subdivision have waived, lost and abandoned any claim to enforce the restrictions and as an example urges that since the defendants, from 1922, have acquiesced in the building and maintenance of a filling station on a plot dedicated in the original agreement as a park for the public use forever, they are now estopped to contend the restrictions are valid. The respondent further alleged that the extension, if allowed until 1999, was so long as to be inequitable. The petition further alleges that the extension agreement imposes an unlawful burden upon each lot in the subdivision; that he brought the action on behalf of himself and other owners of lots similarly situated and that when the existence of his action was made known to the other lot owners, a meeting was held by a "large number" thereof and those in attendance determined that appellants' counsel should be employed on behalf of that group to conduct the defense of respondent's action; that there are 245 lots involved, with 237 owners or groups of owners, and the attempted extension involves questions of law common to all of them; that their large number makes it impractical to bring all of them in; that this action will fully and adequately determine those questions common to all of the lot owners; and that the presence of only appellants, being either owners of lots, or trustees, or both, insures fair and adequate representation of all the owners of lots who oppose respondent's position. The usual necessary allegation as to no adequate remedy at law was also made. The petition prayed that the trial court declare the new indenture null and void in toto, and enjoin the appellants from acting as trustees and from enforcing the restrictions contained in either restrictive document.

The appellants offered no evidence on the merits, for the reason stated in their brief that " * * * the Court was without jurisdiction because this was not a class action." The trial court made certain findings of fact and conclusions of law, entered its decree in favor of the respondent, and this appeal followed. The appellants present five points upon appeal, but they are actually subdivisions of their basic con-

tention that this was not a class action and therefore the court had no jurisdiction to determine the issues.

■■ An equity proceeding is considered de novo upon appeal, as if it had originated here and was to be heard for the first time. Lins v. Lenhardt, 127 Mo. 271, 29 S.W. 1025, quoted in Ford v. Boyd, Mo.App., 298 S.W.2d 501. We are to reach our own conclusions as to the law and the evidence upon a review of the entire record, and have authority to enter such judgment as we find the trial court ought to have entered in conformity with the law. § 510.310 RSMo 1949, V.A.M.S., § 512.160 RSMo 1949, V.A.M.S.

Upon argument and to a lesser extent, as a subpoint under the general contention that no class action would lie in this case, appellants have attempted to raise a constitutional question. Such a question is not present in this case. This court is a court of general jurisdiction, and the Supreme Court has that jurisdiction specifically conferred upon it by the provisions of Article V, Sec. 3 of the Constitution of Missouri, 1945, V.A.M.S. The provision of that Section and Article grants exclusive appellate jurisdiction to the Supreme Court in all cases involving the construction of the constitution of this State or of the United States. There are several reasons why the jurisdiction of this court is properly invoked.

■ In the first place, the question of the presence of a point requiring construction of the Constitution (see Dorrance v. Dorrance, 242 Mo. 625, 148 S.W. 94) must be properly presented and preserved. The steps necessary are well known. The question must be raised at the first available opportunity; the sections of the Constitution claimed violated must be specified or designated; the point must be presented in the motion for new trial; and it must be adequately covered in the briefs. State of Missouri v. Brookshire, Mo., 325 S.W.2d 497; City of St. Louis v. Butler Co., 358

Mo. 1221, 219 S.W.2d 372; State v. Becker, Mo.App., 268 S.W.2d 51; City of St. Louis v. Stenson, Mo.App., 333 S.W.2d 529. While the motion for new trial does state specifically the alleged violation of the Fifth and Fourteenth Amendments of the Constitution of the United States, and Section 10, Article I of the Constitution of Missouri, 1945, the answer makes no such statement. Neither does it refer at any place to the Constitution by name, nor to the due process clause, nor any specific designation whereby it could be so pinpointed as to say that the additional citation of Article and Section would be superfluous. Compare State v. Becker, supra, and see City of St. Louis v. Friedman, 358 Mo. 681, 216 S.W.2d 475. Of course, the reference to the Fifth Amendment of the Constitution of the United States could be of no assistance to the appellants, even if it had been set out at the earliest opportunity. That amendment applies only to offenses against, and trials under, the laws of the United States. State of Missouri v. Brookshire, supra. It is true that the requirement of earliest available opportunity must depend upon the facts of each case, but there is nothing here to show any reason why the motion for new trial was the earliest opportunity available to appellant to raise the point. The point of a violation of constitutional rights, if present in this case at all, was present from the inception of the action since the question attempted to be raised deals with the trial court's jurisdiction. Appeal of Mac Sales Co., Mo., 256 S.W.2d 783, transferred State v. Mac Sales Co., Mo.App., 263 S.W.2d 860. The objection voiced by the appellants' counsel prior to the introduction of evidence in the cause does not appear in this record although he agreed that it was "on the class action." There is nothing to show the objection stated constitutional grounds. Ordinarily, a constitutional question that could have been presented properly by pleading may not be injected for the first time at trial, and under such circumstances, an objection at trial to the introduction of evidence comes too late.

Ivey v. Ayers, Mo., 301 S.W.2d 790; 16 C.J.S. Constitutional Law § 96b. Furthermore, the constitutional question was not fully covered by the brief of appellants upon this appeal. Certainly, at that stage of this proceeding, the appellants should be held to state the constitutional provision claimed violated with definiteness, especially since they did so in the motion for new trial, but again, there is no mention of the Constitution beyond a recitation that " * * * judgment for plaintiff has deprived such other homeowners of due process of law * * *." At that late point in the proceedings, we think the requirement of specification to require more strict compliance than earlier, as for example, upon pleading. Compare State v. Becker, supra.

■■ In addition to the reasons above stated, there is not a constitutional question here involved requiring transfer to the Supreme Court for the reason that if any person's constitutional rights were violated, it was not the appellants'. They had service, and should not now be heard to argue both fish and fowl. They contend that the lot owners not served do not have representation and so there is a violation of their constitutional rights, but if their argument is so, and appellants' counsel do not represent these other lot owners, upon what basis can counsel who does not represent a person urge the violation of that person's constitution rights? The absent lot owners are the proper persons to make such a point, and they have not done so, unless counsel for appellants is doing it for them, in which case they are then represented and the other attack must fail. There is no contention that counsel appeared especially for this purpose only for the lot owners not served. The appellants cannot urge the unconstitutionality of the class action section of our statutes in the absence of any showing of injury to them but can only do so when the statute is applied to their disadvantage. Miller v. Police Retirement System of City of St. Louis, Mo., 296 S.W.2d 78.

For the reasons that the question of constitutional construction was not properly presented and preserved, and because appellants are not the proper parties to raise the point, we do not find a constitutional question invoking the exclusive appellate jurisdiction of the Supreme Court to be present in this case.

There has never been any contention by either of the parties as to the theory of virtual representation in equity being in this case, and for that reason we will not discuss that doctrine, but will confine ourselves to whether or not this is a class action under the provisions of § 507.070 RSMo 1949, V.A.M.S., as supplemented by Supreme Court Rule 3.07(a).[1]

The wording of § 507.070, supra, is of importance:

"1. If persons constituting a class are very numerous or it is impracticable to bring them all before the court, such of them, one or more, as will fairly insure adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is

"(1) Joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;

"(2) Several, and the object of the action is the adjudication of claims which do or may affect specific property involved in the action; or

"(3) Several, and there is a common question of law or fact affecting the several rights and a common relief is sought. Nothing in this section shall be construed to affect the rights or liabilities of labor unions to sue or be sued. * * *"

This section of our statutes therefore recognizes all three types of class action, subparagraph (1) recognizing that which

1. Now Civil Rule 52.09, V.A.M.R.

is usually called the true class suit, the type with which we are here concerned; subparagraph (2) recognizing the hybrid class action; and subparagraph (3) the spurious class action. For a summarization and discussion of the history of similar statutes, see Wheaton, Representative Suits Involving Numerous Litigants, 19 Cornell Law Quarterly 399.

■■ If this is a class action at all, it falls within the classification of the true type of class action. The Restatement, Judgments, § 86(b) says that such a class action is to be used where it is not feasible for all persons whose interests may be affected by an action to be made parties to it, and points out that such a suit was invented by equity for situations in which the number of persons having substantial interests in the litigation is so great that it is impracticable to join all of them as parties, if one proceeds under the usual rules of procedure. It is a cardinal principle of jurisprudence that one is not bound by a judgment in personam entered in litigation to which he was not designated as a party or made a party by service of process or entry of appearance. In the case of the true type of class action with which we are here involved, the judgment will be conclusive on the whole class. The rationale of the class action device is that the members of the class who are present are entitled to stand in judgment for those who are absent, the relationship between them being such that the natural instinct for self-preservation will cause those members of the class present in the suit to take all proper steps to protect their own interests and, by doing so, will necessarily protect all others whose rights are joint, or common with theirs. See Restatement, Judgments, supra. In this connection, the intent of Supreme Court Rule 3.07(a) was undoubtedly to make more certain that all members of the class were adequately represented, and to prevent collusive actions. That rule reads as follows:

"(a) Whenever an action is instituted by one or more plaintiffs as representative or representatives of a class or against one or more defendants as representative or representatives of a class, the petition shall allege such facts as shall show that they or the defendants specifically named and served with process have been *fairly chosen and adequately and fairly represent the whole class*. The plaintiff shall be required to prove such allegations, unless all of the members of the class have entered their appearance, and it shall not be sufficient to prove such facts by the admission or admissions of the defendants who have entered their appearance." (Emphasis supplied.)

■ The purpose sought to be accomplished by adoption of the statute and rule was to allow the ease and convenience of a statutory form of the equitable doctrine of virtual representation, and at the same time to protect the members of the class not named and served against collusive actions resulting in their interests not being fully protected and presented to the courts. See Campbell v. Webb, 363 Mo. 1192, 258 S.W.2d 595, loc. cit. page 601, wherein the only difference between the equitable doctrine of virtual representation and their statutory class action is said to be the requirements of Supreme Court Rule 3.07. The requirements of both the statute and the rule are mandatory, and not merely technical or directory. City of St. Ann v. Buschard, Mo.App., 299 S.W.2d 546; Campbell v. Webb, supra, Milton Construction & Supply Co. v. Metropolitan St. Louis Sewer District, Mo.App., 308 S.W.2d 769; Hribernik v. Reorganized School District R-3, Mo.App., 276 S.W.2d 596.

■ Construing the Supreme Court rule and the statute together, it has been said that there are at least three prerequisites to the bringing of any type of class action: first, that the persons constituting a class are very numerous or that it is impracticable to bring them all before the court;

second, that the persons bringing the action or those it is brought against shall fairly insure the adequate representation of all on behalf of whom they sue or are sued; third, that the facts showing that those named and served insure adequate and fair representation must be alleged and proved unless all of the members of the class have entered their appearance, a circumstance not present in the instant case. See Campbell v. Webb, supra.

 The first of these requirements is stated by the statute itself, and requires that the persons making up the class be either very numerous or it must be impractical to bring them all before the court. The finding that either of these two factors exists negatives the necessity for finding the other. The use of the word "or" compels this disjunctive interpretation. Campbell v. Webb, supra, recognized that while the parties may be so numerous that their number alone may be sufficient basis for determining them to be "very numerous" within the meaning of the section, nevertheless, the impracticability of bringing them all into court is a circumstance always to be considered in determining whether any given number of parties is such that they may be said to be "very numerous" within the meaning of the statute. When considering the other part of the disjunctive statement contained in the general prerequisites stated in the statute, it is equally clear that since the legislature set up impracticability as an independent subjective ground for maintenance of a class action, that ground may exist and it be impracticable to bring all of the parties before the court for some reason other than that the parties are very numerous. Compare Federal Rules of Civil Procedure, Rule 23, 28 U.S.C.A. See Missouri Proposed Civil Rules, 21 U. of K. C. Law Review 57. The number of defendants here involved is stated by the appellants to be 237, and by the respondent to be 418 persons. The probable explanation for the difference in number arises from the manner in which title to the various lots was held, and whether or not every person having an interest in the title to each lot was to be counted. For the proper method of counting parties in analogous situations dealing with protests or remonstrances as to improvements, see Findley-Kehl Investment Co. v. O'Connor, Mo., 256 S.W. 798, loc. cit. 802; Kitchen v. City of Clinton, 320 Mo. 569, 8 S.W.2d 602, loc. cit. 605; Blackwell v. City of Lee's Summit, 326 Mo. 491, 32 S.W.2d 63, loc. cit. 67; and see the collected cases in Missouri and in the majority of jurisdictions in the United States in 3 A.L.R.2d at the note beginning on page 127. We need not decide that question here. The allegations of the petition are that there are 245 lots involving 237 owners or groups of owners, and this allegation is amply supported by proof. The number of appellants here involved is such that their number alone, as recognized in Campbell v. Webb, supra, that it might, furnishes a sufficient basis for the determination that the parties involved fall within the meaning of the term, "very numerous", as that term is used in § 507.070, supra. It follows from what we have earlier said that the determination of this question makes it unnecessary to decide whether or not the parties here involved are so numerous that it is impracticable to bring them all before the court.

 In determining whether or not the second prerequisite for the bringing of a class action is present in this case, that is, whether or not the members of the class named and served (the appellants) will fairly insure adequate representation of all of that class, Rule 3.07(a) also uses the language " * * * fairly chosen and adequately and fairly represent the whole class." In the City of St. Ann v. Buschard, supra [299 S.W.2d 554], we reiterated our interpretation of this part of the rule as stated in the earlier case of Hribernik v. Reorganized School District R–3, supra, as forbidding " * * * suitors to bind members of a class unless it is made apparent by the procedure followed that they fairly and adequately represent that class." Just as the use of the disjunctive "or" in the

statute requires only one of the two elements as to the first prerequisite to be present, in like manner the use of the conjunctive "and" in the Rule requires that the representatives of the class named and served be proven to be both "fairly chosen" and to "adequately and fairly represent the whole class." It is to be noted that neither the rule nor the statute sets forth any list or explanation of the matters that must be found in order to determine whether or not those served are fairly chosen and adequately and fairly represent the whole class. We think any attempt to do so would be foredoomed, and the correct rule was stated in the City of St. Ann v. Buschard, supra, requiring each case to be determined upon its own particular facts. In general terms, the factors to be considered include any matter which would prove or reasonably indicate the lack of such an adversary interest on the part of those named and served as to lead, if not to collusion, then to the lack of a full and complete presentation of the rights of those members of the class not named or served.

The petition alleged that a meeting was held of a large number of lot owners and the pendency of this action being made known to them, a discussion occurred as to what action, if any, the group was to take, that it was determined to contest the action, and the hiring of counsel was authorized. The petition further alleges that those named as defendants in the action are either owners of lots in the subdivision, trustees under the original restrictions and/or the new restrictions, or both owners and trustees, and that their presence insures fair and adequate representation of all the owners. Such allegations are sufficient to comply with the statute and rule. What of their proof?

Upon the issue of proof, both parties place almost their entire reliance upon their different interpretations of the alleged meeting and what took place thereat. While a meeting of the class would be evidence of the fact that those designated thereat were indeed fairly chosen and such as would adequately and fairly represent the whole class, it would not be conclusive of that issue. Those named and served could well be fairly chosen without any such meeting. In like manner, those chosen at a meeting could well be held not to have been fairly chosen, as, for example, if the meeting was in fact controlled by those in favor of the respondent's position. In any event, we do not think the purpose of the statute and rule to be served by an undue emphasis upon some meeting and election, or other means of designation thereat, of those named and served. To grant such significance to a meeting of the class would, in practical effect, place an almost unbearable burden upon those contending a class action in the likely event the class would then refuse to hold such a meeting or make such a designation thereat of its representatives. Moreover, it would require inquiry into and the determination of such matters as the proper number to hold such a meeting, the adequacy of the notice of the meeting, what number of votes would be required to designate representatives or to refuse to do so, how each piece of property is to be voted (in a case involving a class of property owners), by the names of all the record owners or only one vote, and other related matters surely never intended by the framers of this statute to be encompassed within it. Whether or not such a meeting as alleged herein was held or not, we believe to be but one factor to be considered in making the final determination as to whether or not the appellants can be said to be those "fairly chosen" who will "adequately and fairly represent the whole class."

The exhibits establish that among those conditions not changed by the new restrictions, but to remain in full force and effect, are those pertaining to the trustees and their duties. These provisions grant the trustees full power and authority to prevent any infringement of the indenture, and to levy an assessment not to exceed $.25 per front foot in any one year to enable the trustees to exercise the duties and powers

granted them under that instrument, and also granted the power to enforce such assessments. It is also provided that any two of the trustees may exercise the powers of the Board of Trustees. Other proof was that it was the appellants' duty and obligation under the restrictions to do everything possible to see to it that the case was decided in favor of those opposing respondent; and that the appellant trustees were in the case defending the lot owners and protecting the indenture and the intention of the restrictions of the subdivision. In addition, the proof was that the trustees named and served did collect some $400 by assessment and pay it to their counsel of record in this case whom they asked to represent them. There was testimony that another $910.80 was paid to counsel in this case for the same purpose of defending the case, but there was no testimony as to the source of such money. Another $117.60 was paid out to other persons for work in connection with depositions, although again, there was no showing that the money came from assessments.

The word "fairly" is defined by Webster's New International Dictionary, 2d Edition, as "in a fair manner; equitably; justly; legitimately; without unfair advantages; * * *." As it is used within the meaning of § 507.070, supra, and Supreme Court Rule 3.07(a), supra, "fairly chosen" means that those members of the class named and served must not have been "hand-picked," so to speak, from among members of the class favoring, or indifferent toward, the opposing position, but must have been picked in a fair manner, justly and equitably, without an attempt to gain unfair advantage, and are among those in the class who can be counted upon to vigorously present the views of the class from which they are chosen. The proof in this case, as summarized above, amply substantiates that these appellants were indeed "fairly chosen" within the meaning of Supreme Court Rule 3.07(a), supra.

In determining whether or not the second element of this conjunctive requirement was proven so that appellants can be said to be those who "adequately and fairly represent the whole class," the language employed in the statute and rule is again indicative of the purpose and intent to allow class actions, provided the rights of the absent class members were fully protected. "Adequately" is the adverbial form of "adequate" and is defined in Webster's New International Dictionary, 2d Edition, as " * * * equal to or sufficient for some (specific) requirement; proportionate, or correspondent; fully sufficient; * * * legally sufficient; such as is lawfully and reasonably sufficient * * *." As we earlier stated herein, the inquiry can be said to encompass all matters proving or reasonably indicating the existence or lack of existence of protection for the absent class members. Accordingly, and without any attempt to enumerate or in any way limit the matters to be inquired into, in this case, our first inquiry is as to how many representatives of a class must be named to to insure adequate and fair representation. Again, the answer must depend upon the facts of each individual case. In the case of the City of St. Ann v. Buschard, supra, we held that under the facts of that case, one defendant was sufficient. In the instant case, it seems obvious to us that, under the facts of this case, the naming of the three trustees, all of whom are lot owners in the subdivision, and another lot owner in the subdivision, is sufficient to meet the requirements of this part of the rule with respect to the number of representatives of the class that must be named. In making such a determination, we rely upon the proof previously stated when it is viewed in the light of the purpose of the statute and rule. In the light of this record and the vigorous presentation of this case on the part of appellants, we can not see how the rights of the other unserved and unnamed members of the class would have been better protected had they been made parties. The very knowledge of the particular facts that came to the appellants by virtue of their position as trustees, as well as their duties and powers under the

restrictions, their very exercise of a part of those powers and the fact that counsel was employed, are all factors that compel the conclusion that nothing more could have been done by naming one hundred, or fifty, or two hundred, or any other given number of the class as parties.

■ The word "adequately" by definition can also be said to require qualification or/and competency in its meaning. In Milton Construction & Supply Co. v. Metropolitan St. Louis Sewer District, supra (308 S.W.2d 769) at loc. cit. 772, this court stated that to allow the appointment of an unqualified representative is the equivalent of refusing representation. Especially is this so when "adequately" is coupled with "fairly." In this sense, the requirement of the rule and statute is that the representation on behalf of the unnamed and unserved lot owners be not only vigorous, but also that those representing the class be qualified to do so. This implies that the representation be proportionate, or corresponding to what the absent landowner would afford himself. It must be equal to what he would have received, had he been made a party. The absent lot owners' representation must be lawfully and reasonably sufficient. We think it obvious that this requirement was fully met in the instant case. Certainly, the absent lot owners had no more to lose in this action than did those who stood in their place, for they were not only lot owners but trustees as well.

As we have stated, these considerations are merely some of the more prominent factors to be considered, and we discuss them with particularity for that reason and because of their importance to the inquiry into whether or not the appellants "adequately and fairly represent the whole class" under the facts in the instant case. For some other considerations that in the proper case might be of equal importance, see City of St. Ann v. Buschard, supra (299 S.W.2d 546) loc. cit. 553 and 554; Crawford, Class Actions Under the Missouri Code, 18 U. of K. C. Law Review 103;

Class Action Under the Missouri Code, 3 St. Louis U.L.J. 391; Lesar, Class Suits and The Federal Rules, 22 Minn. Law Review 34; Blackmar, Missouri Proposed Civil Rules, A Critical Synopsis, 21 U. of K. C. Law Review 57; and a note in that same volume at page 215. In any event, having squarely in the mind the purpose of the statute and rule, upon consideration of all the factors involved, the proof clearly established that the appellants "adequately and fairly represent the whole class" within the meaning of the Supreme Court Rule 3.07(a).

■ It is immediately apparent that the proof of the allegations of the petition stating this action to be a class action, as it is summarized in this opinion, comes from the exhibits and also from the admissions of the appellants themselves, and in this latter respect, it may be contended that to do so violates the prohibition in Supreme Court Rule 3.07(a), supra, that proof of such matters be given by the admissions of " * * * the defendants who have entered their appearance,"—in this case, the appellants. Again it is necessary to keep the purpose and intent of the statute and rule constantly before us. Since it is so readily apparent from this record that these proceedings were truly adversary in character and that the appellants were fairly chosen and did adequately and fairly represent the whole class of lot owners in the subdivision, it is obvious that the purpose of the statute and rule will not be furthered by refusing to allow the testimony of the appellants to have probative value upon these issues. Especially is this so in view of the fact that the appellants were called to the stand by the respondent. We believe that the purpose and intent of the language in the rule forbidding proof that the representatives of the class have been fairly chosen and adequately and fairly represent the whole class to come from the admissions of defendants was an expression of the Supreme Court's avowed purpose to prevent collusive lawsuits and to insure that the absent members of the class were fully and

adequately represented by those who, in legal action, stood in their shoes. As we have previously held herein, there can be no doubt of that in this case, and therefore, in view of that fact and for the additional reason that this evidence was given as a part of respondent's case, under the facts here presented we believe that the testimony of the appellants is not disqualified from our consideration under the provisions of Rule 3.07(a).

It follows from what we have held above that the naming and serving of process of the appellants in this case met the requirements of § 507.070, supra, and Supreme Court Rule 3.07(a), supra.

■■■■ The appellants offered no proof upon the merits at trial and upon appeal, they have not briefed the merits, nor did they, in any of the points they raised in brief or argument, make any contention as to the failure of proof by the respondent upon the merits of the action. By adopting such a procedure, they have in effect conceded that the judgment of the trial court in favor of respondent upon the merits should be affirmed. However, since this court does hear matters of this nature as if they had originated before us, Lins v. Lenhardt, supra, and since we are constrained to do equity, a ruling upon the merits is indicated. In this respect, upon a review of the whole record, the trial chancellor's findings and judgment upon the merits are fully in accord with our own, and it follows that the judgment in this case should be affirmed. The Commissioner so recommends.

PER CURIAM.

The foregoing opinion of BRADY, C., is adopted as the opinion of the court.

The judgment is affirmed.

WOLFE, P. J., and ANDERSON and RUDDY, J., concur.