CITY OF CREVE COEUR, a Municipal Corporation, Plaintiff-Respondent,

v.

Dwight A. BRAME and Nellie Brame, Lenora M. Gibson and John J. Ingledew, Defendants,

Jessie Lindner, Ralph E. Lindner and W. Roy Lindner, Defendants-Appellants,

St. Louis County, Missouri, and Lawrence K. Roos, County Supervisor, Intervenors, Defendants,

Jefferson Savings & Loan Association, a Corporation, Intervenor, Defendant-Respondent.

No. 33232.

St. Louis Court of Appeals.

Missouri.

Sept. 16, 1969.

John J. Cavanaugh, Clayton, Herder & Bannes, St. Louis, for defendants-appellants.

Joseph B. Moore, County Counselor, Clayton, for defendants-St. Louis County, and others.

Robert W. Kroening, William H. Wyne, Jr., Clayton, for plaintiff-respondent.

John J. McAtee, Clayton, for defendant-respondent.

CLEMENS, Commissioner.

Municipal annexation case under the Sawyers Act as it applies to St. Louis County. (§§ 71.015 and 71.860 to 71.920, V.A.M.S.) Following a resolution by the City of Creve Coeur's Board of Aldermen the voters of the City and of the area to be annexed held separate elections favoring the proposed annexation. The City then filed this action for a declaratory judgment upholding the annexation's reasonableness and necessity. The City prevailed in the trial court and three owners and residents of the area to be annexed, Roy, Jessie and Ralph Lindner, appeal. (In the trial court respondent Jefferson Savings and Loan Association, owner of one tract in the area to be annexed, intervened as a defendant but joined in the City's prayer for annexation. The County of St. Louis and Lawrence K. Roos, its Supervisor, also intervened as defendants and sought a denial of the annexation, but they do not appeal from the adverse judgment.)

The City has moved to dismiss the Lindners' appeal on the ground of an inadequate statement of facts in Lindners' brief. They promptly filed a supplemental brief so we deny the motion to dismiss the appeal.

The Lindners raise three issues: The sufficiency of evidence to show the annexation was reasonable and necessary; the trial court's exclusion of evidence that persons voting in the area to be annexed were unqualified; and that the City must hold two separate elections, one under §§ 71.860 to 71.900 of the Sawyers Act and still another under § 79.020 pertaining to annexation by fourth class cities. These points in turn.

■ *Reasonable Necessity of Annexation.* Neither the trial court nor this court has the right to tinker with the legislative and political machinery that approved the proposed annexation. The City's legislative decision that the proposed annexation was necessary and reasonable can be judicially nullified only if that decision is so lacking in evidentiary support that the issue was not fairly debatable and thus showed an abuse of legislative power. City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4 [7]; Julian v. Mayor, Councilmen and Citizens of City of Liberty, Mo., 391 S.W. 2d 864 [3].

The area to be annexed contains 122 acres of partly wooded, rolling land undeveloped but for two dwellings. The size of the Lindner and Jefferson tracts is in doubt. Jefferson claims 78 acres. Defendant Roy Lindner testified he has 60 acres, but his brief says 40 acres. We accept the smaller figure since it is more consistent with Jefferson's testimony and the Lindner brief. Under St. Louis County's comprehensive zoning plan the entire area is zoned for one-acre residential tracts. The land is bounded north and east by the City's residentially developed areas. Three public roads lead to the area. The defendants Lindner live on the eastern part; half their land is tillable and half is pasture. Defendant Roy Lindner uses the land in conjunction with other farming operation and a brush burning service. Defendant Jefferson owns the northern and western part of the land. Jefferson's caretaker, defendant John Ingledew, lived

there, as did defendants Dwight and Nellie Brame and Lenora Gibson. The area to be annexed is suitable for residential development into acre and half-acre lots, and annexation would allow an orderly development in harmony with the adjacent residential area of the City.

On this issue of reasonable necessity plaintiff had testimony by city officials and residents and owners of the area to be annexed. Defendants' evidence came mainly from the protesting defendant Roy Lindner and St. Louis County officials, who testified about existing county services in the area to be annexed.

The City's vigorous growth is typical of the population explosion in surburban St. Louis County. Since its incorporation in 1950 the City's population has grown from 2,000 to 9,000, mostly in the past ten years. By three previous annexations since 1962 the City has added over a thousand acres; each added area has been substantially developed. The City's six-square-mile area is hemmed in on the north, east and south by developed and incorporated areas; the only room for expansion lies to the west, in the direction of defendants' lands. The City has a commercial area, numerous public buildings, two municipal parks, a golf course, a college, and the grounds of Monsanto Chemical Company and St. John's Hospital. Its land is used principally for 2,000 single-family residences on lots averaging over half an acre in size. Significantly, in 1964 120 new homes were built in the City, 179 were added in 1965, and 146 more in 1966. Approximately 20 per cent of the City's area is open but only half of that is suitable for new residences. The City still has some vacant lots but it can reasonably be forecast that construction of new homes will soon use these, leaving no land for residential development.

■ From all this we find that the City now has a reasonable need for some of the land in question for residential development and will need more in the future. In short, there is a reasonable necessity for the

proposed extension of the City's boundaries. As in City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505 [6], we see here a growing city with a need for outside land for home-sites, where the city's history of continuous growth gives it the right to anticipate its future needs for space.

The City's government is fully developed. It operates under a mayor and four aldermen; it has a marshal in charge of police, a municipal judge, a collector and a clerk. The City employs an attorney, an engineer, and building, plumbing and electrical inspectors. The aldermen are aided by boards for planning and zoning, zoning adjustment, architecture, police commissioners and a health commissioner. The City's comprehensive zoning and building codes are enforced by a committee supervising building permits and construction.

Other municipal functions are performed by full-time and part-time employees. Fourteen full-time policemen are professionally trained and each is a deputy sheriff of St. Louis County. Two full-time and six part-time men maintain public and private streets and the regular disposal of trash and garbage.

The City is financially sound. Since 1950 its assessed valuation has risen from two and a half million to twenty-six million dollars. Its tax rate is 35¢ per $100 assessed valuation. At the end of 1965 the City had a $222,000 cash balance and no bonded debt.

The City has a new city hall housing police headquarters, the jail, and administrative offices. It owns three fully equipped police cars, and numerous trucks and equipment for street and park maintenance. The City furnishes snow clearing and cindering service in winter and mosquito fogging service in the summer. Fire protection, water and sewer facilities are furnished by other municipal units. All services now afforded by the City can be extended without undue delay into the area to be annexed.

St. Louis County affords municipal services to the area to be annexed. Zoning and building requirements are set by St. Louis County ordinances The County Police Department patrols the area but coverage is light. St. Louis County zoning enforcement, health service and building inspection are available to the area to be annexed, but there is neither public garbage nor trash removal service. Comparing the municipal services, we find that annexation can give the area to be annexed the benefits of municipal government and better services in police protection, road maintenance, sanitation, health and welfare.

■■ Contrary to the Lindners' contention, the City has shown that the proposed annexation met the statutory requirement of necessity. But in reaching our ultimate decision of reasonableness we must consider the comparative benefits and detriments to both the City and the area to be annexed. City of Olivette v. Graeler, Mo., 338 S.W. 2d 827 [16]; City of Aurora v. Empire Dist. Elec. Co., Mo.App., 354 S.W.2d 45 [4]. Considering the City's need for expansion and its ability to render municipal services, and weighing this against the annexation's positive and negative effects upon the Jefferson-Lindner area, we cannot say that the City's decision to annex was an abuse of its legislative power.

We deny the Lindners' forcible contention that the proposed annexation is unreasonable as to them since their land's best use is agricultural. There was no evidence of best use as that related to value, only that Mr. Lindner had always farmed the land. That land was only part of the area to be annexed, which we must consider as a whole. City of Bourbon v. Miller, Mo., 420 S.W.2d 296 [5].

Since the Lindners contend the agricultural nature of their land makes the annexation unreasonable, we consider the divergence between the proposed use of the Lindners' and Jefferson's lands. Defendant Jefferson urged the City to initiate this annexation. Several years ago Jefferson

bought a large tract of open land, partly within the City and partly within the area to be annexed. Jefferson had developed and sold its land within the City and wanted to develop the rest of its land consistently with its original development. Jefferson felt this could best be done if the City's zoning and municipal regulations and services were uniform for both tracts. The City concurred. On the other hand, the Lindners had always used their land for farming and wanted to maintain the existing one-acre zoning imposed by St. Louis County rather than the half-acre zoning desired by Jefferson.

Accordingly, a look at the whole area shows Jefferson's 78 acres readily available for the City's needed residential expansion, and the Lindners' 40 (or possibly 60) acres suitable but perhaps unavailable for that purpose since the Lindners oppose annexation. To support their contention that farm land should not be annexed, the Lindners cite Jones v. City of Ferguson, Mo.App., 164 S.W.2d 112 [4]. Other factors entered the decision to deny that annexation. There the city already had an abundance of undeveloped land; the major part of the annexed area was farm land; the city had little municipal service to offer; and the annexation's main effect was to give the city additional tax revenue without reciprocal advantage to the annexed area. The Ferguson case is not persuasive here since the only common factor is agricultural land.

■ The agricultural nature of the Lindner land is not to be overlooked, but that is only one factor to be measured against the other factors favoring annexation. City of St. Joseph v. Hankinson, Mo., 312 S.W.2d 4 [14], and City of Fulton v. Dawson, Mo.App., 325 S.W.2d 505 [7–9], where the court said: "The fact, if it be a fact, that 701 acres of the 1675 is used for farming or grazing purposes does not of itself mean that the city's exercise of its legislative decision to annex it is so unreasonable as to be an abuse of its legislative powers. Rather it is but a factor to be considered along with the other pertinent factors comprising the total picture, and all should be considered in determining whether the municipality's council has abused its lawful legislative discretion. No single fact or item should be isolated from the other facts or considered out of context. Each case is a separate problem to be considered on all its facts. Considering the amount, nature, use and value of the land proposed to be taken, the present need of the city for more land for building purposes, and to a reasonable extent, its future needs in that regard and the adaptability of the land to urban purposes as well as other previously mentioned considerations that bear on the question although to a lesser degree, we are unable to conclude that the city abused its legislative discretion in including the mentioned 'farm land' in its proposed annexation."

We adopt that language in ruling against the Lindners' contention that the proposed annexation was unreasonable and unnecessary, and we uphold the trial court's ruling that the City met its statutory burden under § 71.015, V.A.M.S.

■ *Sufficiency of the Declaratory Judgment.* The Lindners make a subordinate challenge to that ruling. They say the trial court's " 'Conclusions of Law and Decree' found only that the annexation was 'reasonable', but failed to find, as the law requires, that the annexation was both 'reasonable' and 'necessary'." This is a mere picking at words. Reasonableness and necessity are "closely related concepts" and necessity is an element of reasonableness. City of Olivette v. Graeler, Mo., 338 S.W. 2d 827 [15]; City of Aurora v. Empire Dist. Elec. Co., Mo.App., 354 S.W.2d 45 [5]. The trial court did not need to pronounce a specific finding that the annexation was "necessary." In ruling the issues in favor of the plaintiff and against the defendants, and in decreeing that the proposed annexation was authorized the court is deemed to have found all unspecified fact issues in accordance with the result

reached. Civil Rule 73.01(b), V.A.M.R. "The force of a decree does not lie in its recitals but in the mandatory or decretal portion thereof, which adjudicates and determines the issues and defines and settles the subject matter of the controversy." Ford v. Boyd, Mo.App., 298 S.W.2d 501 [6].

■ *Voter Qualifications.* Pursuant to §§ 71.860 and 113.010 to 113.420, V.A.M.S., the St. Louis County Board of Election Commissioners conducted separate elections on the annexation proposition within the City and within the area to be annexed. The Election Board certified that within the City the annexation was approved by a vote of 152 to 56, and within the area to be annexed was approved by a vote of 4 to 3. The Lindners now contend the trial court erred by excluding evidence about the residential voting qualifications of defendants Brame and Gibson. This, despite Roy Lindner's testimony that they did live in the area to be annexed at election time. Nor did the Lindners' proffered testimony show non-residence. Furthermore, at trial Lindners' counsel denied he was challenging voter qualifications and declared his purpose was to disprove the City's allegation that the named defendants were representative owners as required in a class action under § 507.070, V.A.M.S. The point now made is raised here for the first time and hence has not been preserved for review. Civil Rule 83.13(a), V.A.M.R.; Bennett v. Kitchin, Mo., 400 S.W.2d 97 [3–4].

■ *The Elections.* At the City's request the trial court declared that only one election was required within the City. The Lindners contend the City must hold two elections, one under §§ 71.860 to 71.900 of the Sawyers Act and still another under § 79.020 concerning elections required to authorize annexations by fourth class cities. They argue that § 71.860 of the Sawyers Act is a general law since it applies to all cities in St. Louis County and that § 79.020 is a special law since it applies only to fourth class cities. This might be relevant if there was a conflict between the two statutes but we find none. Each statute requires the same thing, approval of an annexation by a city's voters. The Sawyers Act is an auxiliary rather than a complete statutory annexation plan. City of Olivette v. Graeler, Mo., 338 S.W.2d 827 [2, 3]. Section 71.860 of the Sawyers Act requires all cities in St. Louis County to hold annexation elections. Section 79.020 requires fourth class cities to hold annexation elections. The two sections are in pari materia. (Compare City of Olivette v. Graeler, supra, [6].)

Statutes in pari materia should be considered together and construed, if possible, to be in harmony and consistent, and to avoid an unreasonable result. State ex rel. Hand v. Bilyeu, Mo.App., 346 S.W.2d 221 [4]; City of Olivette v. Graeler, supra, [6]. So considering the two statutes, we find no merit in the Lindners' contention that the City must hold two elections on the same proposition.

The judgment is affirmed.

PER CURIAM.

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is affirmed.

WOLFE, P. J., and HERBERT K. MOSS, Special Judge, concur.