CITY OF ST. CHARLES, a Municipal Corporation, Plaintiff-Respondent,

v.

Robert SCHROEDER et al., Defendants, Harold Berger, et al., Intervenor Defendants-Appellants.

No. 33884.

St. Louis Court of Appeals, Missouri.

Nov. 23, 1971.

J. B. Carter, Paul Gordon Latt, Clayton, for defendants-appellants.

Davis & Hannegan, Ervin D. Davis, St. Charles, for plaintiff-respondent.

DOERNER, Commissioner.

By this action, brought under what is commonly known as the Sawyer Act, Section 71.015, RSMo 1969, V.A.M.S., the City of St. Charles sought a declaratory judgment authorizing it to proceed with the annexation of 5843 acres adjacent to the present city limits. The trial court sustained the City's petition and entered the judgment prayed for, and the above named intervening defendants, hereafter referred to as the defendants, appealed.

The map incorporated herein and a brief statement of the events preceding the institution of the suit will facilitate an understanding of the issues presented.

[A4562]

The evidence reveals that prior to 1960 the City of St. Charles, a city of the third class, contained 2959 acres. In that year the City annexed an area of 2316 acres. Thereby it almost doubled its size to a total of 5275 acres, contained in the area marked "A" on the foregoing map. On November 27, 1967, the City adopted two resolutions which together proposed the annexation of additional land with a combined acreage of 10,908 acres. Separate petitions for declaratory judgments were filed by the City on January 4, 1968, in the Circuit Court of St. Charles County, each of which dealt with different areas. By the first action, assigned Cause Number 5888, the City sought the court's approval of the annexation of 5065 acres located south of Interstate Highway 70, designated on the foregoing map as area "B". By the second action, given Cause Number 5889, the City sought authorization by the court for the annexation of a total of 5843 acres contained in the parts marked C–1, C–2 and C–3, frequently referred to in the evidence, respectively, as the cone-shaped area, the triangle area, and the bottom land area.

In general, the City as presently constituted sits on high ground, overlooking the Missouri River. From the record it appears that the cone-shaped area, C–1, is similarly situated topographically. The triangular area, C–2, contains a subdivision named Mamelles Hills, located on high, hilly land. The Wabash Railroad, which follows the present northern city limits, is built at the foot of bluffs along which the Mississippi River once flowed. From these bluffs toward the present location of the river the area marked C–3, containing about 3000 acres, is bottom land. It is undisputed that except for about 700 acres used for an airport virtually all of the 3000 acres are presently used for agricultural purposes.

With that background in mind we turn to the consideration of the first of the two points relied on by defendants in this appeal. Section 71.015 provides that the action brought · thereunder, " * * * shall be a class action against the inhabitants of such unincorporated area * * *." Civil Rule 52.09, V.A.M.R., requires that the petition in a class action shall allege such facts as shall show that " * * * the defendants specifically named and served with process have been fairly chosen and adequately and fairly represent the whole class. The plaintiff shall be required to prove such allegations, * * *." The gist of defendants' initial point is that the 21 persons named as defendants, both in the City's original petition and in its second amended petition, on which the case was tried, were not fairly chosen and did not adequately represent the class of persons within the area the City proposed to annex.

We are of the opinion that there is merit in defendants' complaint. The only evidence as to the manner in which the 21 original defendants were chosen was the testimony of Ervin D. Davis, the attorney for the City. He testified that " * * * I personally chose those names from a list of names that was furnished to me as being property owners within the proposed annexed areas. I simply chose names at random with the reservation that I tried to choose some who were home owners within a subdivision and some who I felt to be owners of a tract of land in contrast to one lot. * * *" He also stated that Gerald O. Denningmann, who with his wife Joy was named as an original defendant, was the owner of a tract but that he didn't know where it was located. Mr. Davis further said that Al Schroeder, similarly named, was the developer of the subdivision called Mamelles Hills. And that Eugene Glosier and Betty Glosier, his wife, who were likewise named, also owned two properties, one near Highway 94 and the other near the Cave Springs overpass.

Mr. Davis was not asked, nor did he state, who furnished him with the list of property owners from which he chose the 21 original defendants. Of greater importance, he was not asked, nor did he state, whether the list from which he made his selections included the names of all of the landowners in the area proposed to be annexed. In that connection we note that attached to the City's second amended petition as an exhibit was a list of names of about 250 persons alleged to be property owners in the unincorporated area. We also note that a similar list of names of about the same number of persons was identified as a list of property owners in the unincorporated area and was admitted into evidence as City's exhibit number 125. A comparison of the two lists, while not exhaustive, indicates that the names on both lists are substantially the same. A careful examination of both does reveal that the names of the 21 persons named as defendants do appear on both lists, and, conversely, that no one was named as an original defendant whose name was not on such lists. There are references in the transcript to 1500 residences existing in the unincorporated area at the time the case was tried, in September 1969, and the City's witness Edward Maran, a consulting engineer, expressed the opinion that

" * * * in the range of 4000" persons lived in that area at that time.

An analysis of the testimony of intervening defendant Paul Griesenauer, uncontradicted in any manner, discloses that the properties owned by the named defendants were concentrated in a relatively narrow geographic area. Eight of such defendants, Robert Schroeder, Alfred Schroeder, James Doyle and Thelma Doyle, his wife, Jim R. Moore and Carolyn M. Moore, his wife, and Carl F. Walther and Olga E. Walther, his wife, resided or owned property in the subdivision named Mamelles Hills. Three, Mary B. Wright (deceased at trial time), and Gerald O. Denningmann and Joy Denningmann, his wife, resided in the Riverside Heights subdivision. Four, Marvin C. Wilson and Margaret E. Wilson, his wife, and Winford Lewis and Nola M. Lewis, his wife, lived in the Twill Manor subdivision. Two, Theodore Bruere and Lillian Bruere, his wife, resided on Fox Hill Road. Four resided within the incorporated limits of the City of St. Charles but owned land in the unincorporated area; Eugene Glosier and Betty Glosier, his wife, on both Highway 94 and near the Cave Springs overpass; and Jerome A. Burkemper and Virginia Burkemper, his wife, in an unspecified area. We note that both St. Charles Hills and Hinemanns are named in both of the foregoing lists as subdivisions, and that throughout the lengthy transcript there are references in the testimony to numerous other subdivisions which existed in the area proposed to be annexed. Yet not one person named in St. Charles Hills, Hinemanns or any of the other subdivisions referred to in the evidence was named as a defendant. Of greater significance, so far as we can determine from the record before us, not one person who resided or owned land in the 3000 acres which comprises the area marked C–3, the bottom land, was named as a defendant. We make that qualification, so far as we can determine from the lengthy record, (of 1228 pages and 173 exhibits) for the reason that time and time again, in locating a place, the witnesses as well as counsel would point to a place on City's exhibit 124, a very large aerial photograph, and designate it as "here" without any further explanation of its location. Such a practice may be sufficient to advise the trial court of the place in question, but it obviously is not sufficient to inform this court.

■ As stated, Civil Rule 52.09(a) provides that in a class action the plaintiff must allege and prove that those defendants named as the representatives of the class were " * * * fairly chosen * * *" and that they "adequately and fairly represent the whole class. * * *" Thus the plaintiff bears the burden of proving both elements. Kansas City Terminal Ry. Co. v. Industrial Commission, Mo., 396 S.W.2d 678; Sheets v. Thomann, Mo.App., 336 S.W.2d 701. The foregoing facts would strongly tend to show that the list from which those named as defendants were chosen did not include all, or even a substantial number, of the property owners in the area proposed to be annexed, and that, to judge from the results, the list used must have been composed of the names of only a relatively small fraction of those who owned land in the area. Choosing names at random from a list may or may not be a fair method of selecting the representatives of a class, but it can hardly be said to be a fair method when the list so used comprises only a minor number of its members and is not representative of the whole class.

As to the second element required to be proven, it is apparent from his testimony that Mr. Davis was of the opinion that the class here involved was that of property owners in the unincorporated area, and that anyone who owned property in that area would "adequately and fairly represent the whole class." That such a result would not necessarily follow appears to have been recognized by Mr. Davis for while he stated that he chose names at random he also said that he made

" * * * the reservation that I tried to choose some who were homeowners within a subdivision and some who I felt to be owners of a tract of land in contrast to one lot." The principle that various considerations must be taken into account before it can be said that those chosen adequately and fairly represent a class was recognized and discussed in City of Lebanon v. Holman, Mo.App., 402 S.W.2d 832, 836, where various examples of the diversity of interests of property owners were given. In the instant case the evidence was that of the 3000 acres in the bottom land about 700 were used as an airport, about 500 by Monsanto Chemical Company as an experimental agricultural station, and 447 acres were owned by the Bakewell Corporation and held for development into industrial tracts but were then being used for agricultural purposes. The remainder of approximately 1900 acres was owned by an unspecified number of farmers and used for agricultural purposes. In addition, the record indicates that some agricultural pursuits were carried on in the cone-shaped area. Obviously an owner of a farm whose remote location indicates the improbability of its sale or development for residential or industrial purposes in the foreseeable future, and who would be required to pay additional taxes for fire, police and other municipal purposes if the annexation was approved, would scarcely have any interest in common with the owner of a single residence in a subdivision immediately adjacent to the present city limits. Yet, as we have pointed out, not a single farmer was named as a representative of the class.

One other aspect of those who were chosen as defendants must be mentioned. Of the 21 persons named as defendants, 18 of whom were husbands and wives, only two, attorney Theodore Bruere and Lillian Bruere, his wife, can be said to have taken an active part in opposing the proposed annexation. Yet the evidence shows that at least as early as the issuance of process in the case considerable opposi-

tion to the proposed annexation developed, a group referrred to as the "The St. Charles Annexation Opposition Association" was formed, an attorney was employed, and funds raised. It appears that the intervening defendants are the representatives of that association. In Sheets v. Thomann, Mo.App., 336 S.W.2d 701, 711, this court pointed out that one of the factors to be considered in the determination of whether the representatives of a class adequately and fairly represented the class is " * * * the lack of such an adversary interest on the part of those named * * * " as such representatives. And see City of Lebanon v. Holman, Mo.App., 402 S.W.2d 832.

For the reasons we have discussed we hold that the City did not sustain its burden of proving that those named as representatives of the class were fairly chosen and that they adequately and fairly represented the whole class.

Since the City may institute a similar suit against proper representatives of the class we do not wish our silence as to the other point raised on appeal to be construed as an implied rejection of the second issue raised by intervening defendants. City of Lebanon v. Holman, supra. That issue is whether the evidence was sufficient to show that the proposed annexation " * * * is reasonable and necessary to the proper development * * * " of the City. Section 71.015. As we said in City of Farmington v. McClard, Mo.App., 437 S.W.2d 114, 122, " * * * It seems altogether likely that the annexation of a certain part or certain portions of the presently proposed annexation area would be found to be reasonable if that certain part or portions were alone the subject matter of the annexation ordinance. But in a proceeding such as this the Court is without power to perform such an amputation. * * * " And in City of Bourbon v. Miller, Mo., en banc, 420 S.W.2d 296, 303, after discussing the two tracts involved, the Supreme Court said, "Since we have held this annexation to be unreasonable and ar-

bitrary in what is, by far, its greater part, we so rule with reference to the entire annexation. * * * " Accordingly, because of the conclusion we have reached regarding the portion referred to as the bottom land, marked C–3, we need not consider whether the proposed annexation of the remainder is reasonable and necessary to the proper development of the city within the meaning of that term.

■ As stated, of the 5843 acres which the City proposes to annex approximately 3000 acres, situated in the portion marked C–3, are flat river bottom land. The City's own evidence showed that the area is unfit for residential purposes. It consists primarily of a soil called "black stick," the nature of which was best described by the City's witness, Maran:

"Well, when it's dry. For example, when it dries it is extremely hard and cracks, fissures, running down to . . . well, as it continues to dry, continues to separate, the further down you go. One rain filling up these warts swells this ground tight. Now that will not allow for water to penetrate after that sealing has occured (sic) and as the contrast to it's condition when it was extremely dry, when it is wet, as you walk through it, you start off with your size 10 shoe and you'll develop a 23 to 25 in five steps.

"Q. It's very sticky?

"A. It's very sticky, yes. And you're practically immobile. Extremely slippery."

The evidence also shows that some parts of the area are subject to flooding when the Mississippi River occasionally reaches a certain height, and that certain low lying parts of the area and of three main roads therein become flooded and impassable from a two or three inch rain, both because of lack of drainage of the terrain and from the impermeability of the ground.

The City contends that the annexation of the area termed bottom land is reasonable and necessary to the proper development of the city for industrial tracts. The weakness in their contention, in our opinion, is two-fold. The City's own witnesses conceded that there was little or no likelihood of any industrial development in the bottom land unless the problem of drainage and flooding could be economically solved. A tacit recognition of the problem of using the bottom land in its natural state is that when the City installed the motors at the wells from which it obtained part of its water supply it mounted the motors 10 feet above the level of the ground. Illustrative of the economic problem involved in solving the drainage and flooding problem on a tract by tract basis is the testimony of one of the City's witnesses, an officer and shareholder of a corporate owner of a tract, that it cost his company about $60,000 to spread an average of a foot of soil over its 26 acres, which sum was expended in an effort to improve the drainage of rain which fell on its land. Both he and others of the City's witnesses expressed the opinion that the only practical and acceptable solution of the problem of drainage and flooding was on an area-wide basis. No evidence was introduced which tended to show that if the annexation was approved the City or any other authority was prepared, or had any plans, to undertake an area-wide solution of the problem. The fact of the matter, as shown by the evidence, is that unless such a solution occurs the bottom land in its present state is no more suitable for industrial use than it is for residential development.

Secondly, there is no evidence of the presently foreseeable need for an industrial area of 3000 acres or any area of that magnitude. We gather from the evidence that the last industrial development of any consequence occurred in about 1962, when the City extended its boundaries to take in an area to include about 140 or 150 acres acquired by Sterling Aluminum, which constructed a plant on part of the tract,

operated at the time of trial by a company (the same or a successor is not clear) then named Conductron. The area so annexed, we hasten to add, is not adjacent to the bottom land. No evidence was introduced that any industry was planning to build in the area proposed to be annexed. If " * * * what is reasonable for the future should be judged chiefly from the known and existing facts," City of Bourbon v. Miller, Mo., in Banc, 420 S.W.2d 297, 303, the greatest weakness in the City's position is that although the bottom land has been zoned by the County of St. Charles for industrial use for some time past, not one single industrial plant has been built in that area, nor was there any evidence of any concrete plan for one.

In brief, we hold that the proposed annexation of the approximately 3000 acres which comprise the bottom land is neither reasonable nor necessary to the proper development of the City of St. Charles within the meaning of Section 71.015.

Accordingly, the judgment is reversed.

PER CURIAM:

The foregoing opinion by DOERNER, C., is adopted as the opinion of this court. Accordingly, judgment reversed.

BRADY, P. J., and DOWD and WOLFE, JJ., concur.