**CITY OF MEXICO, Respondent,**

v.

**John L. SALMONS and Norma Lee Salmons et al., Appellants.**

**No. 35324.**

Missouri Court of Appeals,
St. Louis District,
Division Two.

Sept. 10, 1974.

Edward D. Hodge, Mexico, for respondent.

M. E. Stokes, St. Louis, for appellants.

CLEMENS, Judge.

The City of Mexico seeks judicial approval under the Sawyers Act, § 71.014, RSMo 1969, V.A.M.S., to annex land on the City's eastern boundary (hereinafter the East Area). The City joined twenty-one land owners as class-action defendants (Rule 52.09, V.A.M.R.). John L. and Norma Lee Salmons, owners of an East Area mobile home court opposed the annexation and the trial court approved the City's plan. The Salmons appeal, contending the proposed annexation is neither necessary nor reasonable.

Mexico is the Audrain County seat and contains seven square miles with 11,807 residents. The East Area contains 2.6 square miles, 211 homes and 612 residents.

The City has the burden of establishing that the proposed annexation is reasonable and necessary for Mexico's development [1] and that Mexico can furnish normal municipal services to the East Area within a reasonable time. Defendants con-

1. and for development of the East Area. City of Olivette v. Graeler, 338 S.W.2d 827 [15, 16] (Mo.1960).

tend the City has failed to meet its burden. Nonetheless, "Neither the trial court nor this court has the right to tinker with the legislative and political machinery that approved the proposed annexation. The City's legislative decision that the proposed annexation was necessary and reasonable can be judicially nullified only if that decision is so lacking in evidentiary support that the issue was not fairly debatable and thus showed an abuse of legislative power." City of Creve Coeur v. Brame, 446 S.W.2d 173 (Mo.App.1969).

■ While we do not have a slide-rule formula to determine reasonable necessity, we do consider certain criteria material. The petitioning city should evince a need for residential or industrial sites within the proposed area.[2] Since the statute requires that annexation be reasonably necessary, petitioner should also manifest an inability to meet its needs without expansion.[3] In determining a city's needs we may consider those which are reasonably foreseeable, but not those which are visionary,[4] and should consider past growth to show future necessity.[5] In evaluating future needs we should consider the extent to which past growth has caused the city to spill over into the proposed area.[6] These criteria guide us in our study of the evidence.

Mexico's geographic shape is square, about two and one-half miles per side. The East Area is roughly a truncated triangle, one-half mile wide where its western boundary joins the City, two miles long from west to east, and one and one-half miles wide at its eastern end. Railroads mark the East Area's northern and southern boundaries; United States Highway 54 bisects the Area from west to east.[7]

Aerial photographs reveal that Mexico is well-developed within its boundaries. Three large tracts are unavailable for municipal development—the privately owned 240-acre Green Estate, the Audrain County fairgrounds and a large flood-plain area. In the City's southwest corner 57 low-income housing units are under construction. The one vacant industrial site within the City contains only 13 acres and is therefore unappealing to industry. These facts support the City's expert opinion testimony that there is a shortage of "attractive or acceptable" residential lots within the City.

Census figures show Mexico's population grew gradually over the years but dropped from 12,889 to 11,807 in 1970. Considered alone these figures negate growth but the City measures growth by other yardsticks. From 1960 to 1972 residential building permits have exceeded razing permits by 517.[8] In the past decade employment at the new Florsheim shoe plant has risen from 310 to 529. In the past five years the City-County Health Center and Hospital has increased patient capacity from 244 to 326 and staff employment from 339 to 525. Within the past few years private business has built a million-dollar shoe factory, a new bank, a new motel, and several office and commercial buildings; numerous old buildings have been modernized. A new shopping center has been built in the City and still another just south of the City limits. At least five mobile home parks lie just outside Mexico's boundaries. Rural

2. City of Butler v. Bock, 492 S.W.2d 160 (Mo.App.1973) ; St. Louis County v. Village of Champ, 438 S.W.2d 205 (Mo.1969).

3. City of Olivette v. Graeler, 338 S.W.2d 827 (Mo.1960).

4. City of Ash Grove v. Davis, 418 S.W.2d 194 (Mo.App.1967).

5. State ex inf. Taylor v. North Kansas City, 360 Mo. 374, 228 S.W.2d 762 (Mo. banc. 1950).

6. City of Butler v. Bock, supra, 492 S.W.2d l. c. 163 [2] ; City of Mexico v. Hodges, 482 S.W.2d 545 (Mo.App.1972) ; City of Houston v. Duff, 338 S.W.2d 373 (Mo.App.1960).

7. See City of Mexico v. Hodges, 482 S.W.2d 545, l. c. 548 (Mo.App.1972) for a plat of Mexico and the East Area.

8. Mexico is continuing to develop its federally-assisted Urban Development housing projects.

mail boxes served by Mexico's post office have increased from 1,100 to 1,600 in the past twelve years. Sites along Highway 54 in the East Area are now fully occupied by commercial and residential units. 612 people reside within the East Area. Most adult residents work in Mexico and use its commercial and recreational facilities; East Area children attend Mexico schools.

We conclude from these facts that despite its population loss, Mexico is growing and spilling over its boundaries.

The East Area contains 40 tracts of varying sizes. Among the developed tracts are the 53-acre Mexico Military Academy, the 90-acre Mexico Country Club, and the 80-acre Mexico airport. Owners of undeveloped tracts are holding them for industrial development. Tracts of 47 and 14 acres are on railroad sidings and tracts of 186 and 197 acres are on railroads and on United States Highway 54. If located within City limits these four tracts would be more desirable to industry.

Also within the East Area are scattered residences and four platted subdivisions, the largest having 329 acres. There are paved streets, recreational facilities and several completed residences. The Salmons' 36-acre tract on Highway 54 has 86 mobile home units, 150 residents, paved streets and an approved sewer system. Other East Area tracts are suitable for agricultural or residential purposes.

Health Department photographs of East Area residential tracts show numerous sanitation defects, including inadequate septic systems that spill into open-road ditches, junk and refuse dumps, uncovered wells, substandard housing, weed patches and rat infestation; most roads are unpaved. A one-truck volunteer fire department provides the fire protection. A private water district serving Highway 54 also serves the East Area.

In contrast Mexico is a Third Class City with a fully staffed city-manager government (§ 78.430, RSMo 1969, V.A.M.S.). A mayor and professionally trained and experienced city manager head the city government. The city engineer and sanitation engineers are experienced and fully trained. An experienced public safety manager heads the combined police and fire departments. Managers of the Missouri Water Company and the 320-bed City-County Hospital are in residence, as is a board member of the state's Industrial Development Commission.

The East Area if annexed could obtain such city services as zoning, building codes, sanitation inspection and enforcement, extension of trunk sewer lines to connect with Mexico's disposal system; street maintenance, city police protection and improved fire protection which would decrease fire insurance rates.

We therefore conclude the proposed annexation is arguably reasonable and necessary to both the City and the East Area.

Granting such reasonable necessity, a second issue arises: Can the City furnish normal municipal services to the East Area within a reasonable time? We are not concerned with water, gas and electrical services which are already available through private utilities serving Mexico and the East Area. The City showed that with its present manpower, vehicles and equipment it can readily and inexpensively provide the East Area with police and fire portection, zoning, building and sanitation services and street maintenance.

A critical concern is whether the City can give the East Area reasonable sanitary sewage facilities. The City's sewage disposal plant is operating at less than half its capacity. A trunk line runs to within a furlong of the East Area; from there a gravity-flow line could be extended through the East Area. Although the line's cost is determinable only after a detailed engineering study, the city engineer estimated that such a line would cost $248,000 and take three to five years to complete.

Defendants contend that Mexico cannot afford to extend municipal services to the East Area. They note that the City's 1971-1972 budget showed receipts of $2,566,000 and disbursements of $2,606,000, a deficit of $40,000. With only these raw figures in mind, the city manager stated he had apprised the city council of the need to curtail or abandon some innovative programs and street improvement plans.

We note the raw figures do not accurately reflect the City's financial condition. $239,000 was invested in short-term notes; thus, income actually exceeded expenditures by $199,000. Also omitted from the budget was the expected receipt of federal revenue sharing money. The City received the first half-year $90,000 installment on a five-year revenue sharing commitment which is expected to produce $900,000 within the time it would take to complete the trunk line sewer in the East Area. The City can also expect approximately $25,000 a year as its share of the state gasoline tax. The City's revenue following the annexation would be increased by the City's seven per cent utility franchise tax and appropriate property and license taxes within the East Area. Considering all these facts the City Manager opined the City could pay for municipal services in the East Area. We conclude the City showed it can furnish normal municipal services to the East Area within a reasonable time.

The City's legislative determination of reasonable necessity for annexation was arguably sound. The trial court held that annexation was reasonable and necessary for proper development of both the City and the East Area and that the City can furnish municipal services to the East Area within a reasonable time. The decision was not clearly erroneous and cannot be reversed on that ground. Rule 73.-01(d), RSMo, V.A.M.R.

Defendants raise three procedural points. We have considered the transcript and defendants' authorities as to each. We find no error of law and extending this opinion to cover those points would have no precedential value. As to these points the judgment is affirmed in accordance with Rule 84.16(b).

Judgment affirmed.

SMITH, P. J., and McMILLIAN and GUNN, JJ., concur.