CITY OF DES PERES, Missouri,
Plaintiff-Respondent,

v.

Richard M. STAPLETON et al., Defend-
ants, and Larry E. White et al., Inter-
venors-Defendants-Appellants.

CITY OF DES PERES, Missouri,
Plaintiff-Respondent,

v.

Robert STEINMEYER et al., Defendants.

Nos. 35668, 35669.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 27, 1975.

McDonald, Wright & Bryan, Clayton, Shulamith Simon, St. Louis, Merle L. Silverstein, Clayton, for intervenors-defendants-appellants.

Sullivan & Evans, St. Louis, for plaintiff-respondent.

DOWD, Judge.

Appeal from a judgment in favor of the City of Des Peres in a declaratory judgment action to annex to the City of Des Peres certain unincorporated lands in St. Louis County. Appellants were intervenors in the suit below.

On February 22, 1971, the City of Des Peres passed two ordinances calling for the annexation of two abutting tracts of land and called for an election to be held to seek voter approval of the proposed annexations. The election was held on April 6, 1971, and the annexations passed by a majority of the

votes in both the City and the unincorporated areas. Pursuant to § 71.015 RSMo 1969, V.A.M.S.,[1] the city filed petitions for declaratory judgment, praying that the court authorize the annexation of the two areas. Various parties were permitted to intervene as defendants in both suits, including St. Louis County. The suits were tried together by order of the trial court. Judgment was entered in favor of both annexations. Only the intervenors in one of the annexation suits (Number 35,668) have taken an appeal. Accordingly, there is no appeal from the annexation of the land involved in appeal number 35,669, and as to that tract of land, the judgment stands as entered.

The City of Des Peres is a Fourth Class City located in St. Louis County, Missouri. It is bordered on the north by the cities of Town and Country and Crystal Lake, on the east by Kirkwood and Frontenac, on the west by Town and Country and a small section of unincorporated land, and on the south by Kirkwood and unincorporated land that includes the two tracts proposed for annexation. The proposed area of annexation is rectangular in shape. Its boundaries are the City of Kirkwood on the east, the Missouri Pacific Railroad right-of-way on the south, Des Peres road on the west and the City of Des Peres on the north. The second tract of land was roughly of the same size and lay directly to the west of the subject tract. Approximately 5333 people live in Des Peres; 180 people lived in the proposed annexation at the time of the filing of this suit. The result of the election in the City of Des Peres was 805 in favor of the annexation, 314 against. In the area to be annexed, the vote was 73 in favor, 15 against.

On July 5, 1973, the trial court entered its decree finding that:

"1. That the Defendants herein were fairly chosen and did adequately and fairly represent the entire class of persons to be bound by this judgment.

2. That the annexation of the areas, as described in Plaintiff's Petitions, are reasonable and necessary for the proper development of the City of Des Peres.

3. That the City of Des Peres will be able to furnish the normal municipal services of said City to the areas to be annexed within a reasonable time after said annexations are to be effective."

Appellants seek to overturn the order of the trial court for basically two reasons. First, the city did not establish a valid class action; and secondly, the city failed to demonstrate the reasonableness and necessity of the annexation.

Appellants' first point on appeal is that the city did not meet its burden in establishing a valid class action. They base this contention on their assertion that the named defendants were not fairly chosen and did not adequately represent the whole class.

■ We note that § 71.015 RSMo 1969, V.A.M.S. provides that the vehicle for authorizing annexations shall be a declaratory judgment action against the inhabitants of the area and shall be brought as a class action under § 507.070 RSMo 1969, V.A.M.S. That section provides for class actions when the persons constituting the class are very

1. The statute requires the petition to "state facts showing:
   1. The area to be annexed;
   2. That such annexation is reasonable and necessary to the proper development of said city; and
   3. The ability of said city to furnish normal municipal services of said city to said unincorporated area within a reasonable time after said annexation is to become effective. Such action shall be a class action against the inhabitants of such unincorporated area under the provisions of section 507.070 RSMo."

numerous; in such a case, one or more of the members of the class as will fairly insure adequate representation of all may be sued. We further note that the Supreme Court Rule in effect at the time this suit was filed was 52.09(a), V.A.M.R., which provided that the defendants be "fairly chosen" and "adequately and fairly represent the whole class" and that the "plaintiff shall be required to prove such allegations . . ." These provisions are mandatory. City of Aurora v. Coleman, 490 S.W.2d 668, 670 (Mo.App.1973). Their purpose is to insure adequacy of representation for those defendants not named and to prevent collusion. Sheets v. Thomann, 336 S.W.2d 701, 709 (Mo.App.1960).

Appellants cite us to three annexation cases where the class of defendants was held to be improper. In City of St. Charles v. Schroeder, 474 S.W.2d 55 (Mo.App.1971), an area with 4000 inhabitants was being annexed. The defendants were selected from a narrow geographic area. One entire area of land which was annexed was unrepresented, as were many of the subdivisions of the area. The defendants were selected at random from a list of residents that did not fairly represent the whole class of inhabitants of the area. The evidence showed much opposition to the annexation and none of the opponents were represented. There was a wide variety of land uses and some of the owners of this land were not represented. In City of Aurora v. Coleman, 490 S.W.2d 668 (Mo.App.1973), no defendants were called to testify, no evidence was presented which would show the defendants were representative of the class, and there was no showing of the manner in which the defendants were selected.[2]

Here, testimony regarding the manner in which the named defendants were chosen was given by Mrs. Griggs, the Mayor of Des Peres. She testified that the defendants were chosen with the assistance of one Clark Parks,[3] and attention was given to choosing people involved in community betterment, people from different areas of the proposed annexation and people owning different amounts of land. Of the six defendants chosen as representatives of the class, three defendants were trustees of subdivisions. Of the 180 inhabitants of the area only 15 voted against the annexation. There was no evidence of a vocal opposition as in the *St. Charles* case. Nothing in the record points to any collusion in selecting these defendants nor to any purposeful omissions of any defendant or group of defendants. The statutory purpose has been satisfied here. Sheets v. Thomann, *supra.*

The thrust of appellants' argument is that four of the named defendants belonged to an association called the Seven Hills Citizens for Community Betterment, and it was this group which first initiated the annexation in 1967, and again later in 1970. Appellants' point is that since four of the defendants belonged to a group that was encouraging the annexation that these four defendants were not "fairly chosen" as the rule requires.

The evidence showed that the Seven Hills group was a voluntary association consisting of citizens of the area who were concerned with community betterment in the Kirkwood, Des Peres and annexation areas. The association was not affiliated with Des Peres in any way. The fact that some of the defendants selected were members of an association committed to the annexation does not require us to hold that the named defendants could not adequately represent the interests of all the inhabitants. The evidence demonstrated that the views of each defendant were for the most part consistent with those of his neighbors.

**2.** Similar facts were presented in City of Lebanon v. Holman, 402 S.W.2d 832 (Mo. App.1966).

**3.** Clark Parks was a member of the Seven Hills Group.

We are convinced that the named defendants could adequately and fairly represent the class of inhabitants of the area.

Appellants' second contention is that the trial court erred in finding the proposed annexation reasonable and necessary. They contend the city has to prove the reasonableness of the annexation from the city's viewpoint, the proposed area's viewpoint and the county's viewpoint, and that the city failed on all levels to meet its burden of proof.

■ This is a municipal annexation case; accordingly we review the case de novo, giving due deference to the trial court where the credibility of witnesses is involved. City of Ash Grove v. Davis, 418 S.W.2d 194, 196 (Mo.App.1967). Judicial review of an annexation case is the final step of authorizing both the legislative decision to annex and the popular vote approving the proposal. "The City's legislative decision that the proposed annexation was necessary and reasonable can be judicially nullified only if that decision is so lacking in evidentiary support that the issue was not fairly debatable and thus showed an abuse of legislative power." City of Creve Coeur v. Brame, 446 S.W.2d 173, 175 (Mo.App. 1969). The statutory test of reasonableness and necessity applies both to the city and to the area proposed for annexation. City of Ash Grove v. Davis, supra, 418 S.W.2d at 196. City of Odessa v. Carroll, 512 S.W.2d 862 (Mo.App.1974). The courts have noted that our review under § 71.015 RSMo 1969, V.A.M.S. (Sawyers Act) is substantially the same now as it was before the passage of the section. City of Creve Coeur v. Patterson, 313 S.W.2d 739, 744 (Mo.App.1958); City of St. Joseph v. Hankinson, 312 S.W.2d 4, 9 (Mo.1958). The city has met its burden when the evidence raises "fairly debatable" issues as to the statutory requirements, that is, when there is substantial evidence on both sides of the question. City of Ash Grove, supra, 418 S.W.2d at 196–197.

■ We also must bear in mind that there is no set rule or formula to be used in evaluating the reasonableness of the annexation. Missouri cases have set forth various factors to be considered in testing the reasonableness and necessity of the annexation. Some of these factors are set out below. Each relevant factor should be considered in relation to the other relevant factors and no single factor is a legal absolute in the sense that it is conclusive. City of Ash Grove, supra, at page 206. Of necessity, then, each case is to be considered under the totality of its own facts. City of Creve Coeur v. Brame, supra, 446 S.W.2d at 177. Furthermore, the city's claim for territorial need must not be approached with a narrow or restricted perspective. City of Houston v. Duff, 338 S.W.2d 373, 382 (Mo. App.1960).

The record before us in this case is quite long (1700 pages) and exhaustive of the issues presented by appellants. Numerous exhibits accompany the transcript. A complete reiteration of all the testimony would make this opinion unduly lengthy. We instead choose to summarize some of the relevant testimony going to the heart of the question of reasonableness.

Mayor Griggs testified for the city that when the resolution to annex was passed the City of Des Peres was governed by a six-man board of aldermen. There was a 14-member planning and zoning commission, as well as a board of adjustment, all of which hold regular meetings. The city consists of some 29 miles of streets which are maintained by a street department. The construction of additional city streets has been financed both by tax-bills and from the city's general revenues. The area to be annexed is just south of the street department's headquarters and on the same road.

The population of Des Peres has increased from 641 in 1940 to 5333 in 1972. In 1970, the assessed value of the city's real property was $18,187,840, and this figure increased by $730,000 in 1971. The city has

a board of public safety and in 1971 had 19 policemen who also served as the city's firemen. The city also maintains its own fire trucks and police cars. Trash is collected by a private contractor paid by the city. The city also pays the county for rabies, rodent and mosquito control, restaurant and swimming pool inspection.

The city is in a sound financial position. In 1970, the city passed a local sales tax which alone was expected to produce $350,-000 in additional revenues. This is due to the fact that a regional shopping center is located within the city, as well as a commercial area along the major thoroughfare of the city, Manchester Road. As of the fiscal year ending June 30, 1970, the city received revenues of $401,586.27, which increased to $519,937.00 by the following year.

The mayor also testified as to the city's need to expand into the proposed area. The city is in need of good land for parks and residential dwellings. At the time the annexation was proposed there were only 100 acres of unused land in the city zoned for residential uses.

As to the needs of the area of the proposed annexation, the mayor testified that the area had no fire protection and no snow removal. It was the mayor's opinion that the city would have no trouble extending all public services to the area, including trash pick-up and added police protection.

Testimony by the street commissioner of the city was to the effect that he had ridden over the five miles of streets in the area, that they were in good repair and saw no reason why the city could not maintain them with the city's existing equipment. Testimony was also given that upon annexation the new area would not only receive fire protection but would also share the city's better fire protection classification, which would reduce insurance rates in the area.

The city also produced testimony from an expert in city planning. It was his opinion that the city had a potential population of 7000 as its boundaries then existed. Less than 10% of the land in the city was available for future growth, and this amount was insufficient for the city to reasonably develop. The city is surrounded on three sides by other cities, making expansion impossible. The only logical area of expansion was the proposed annexation. It was the expert's opinion that at least part of the growth in the proposed annexation was spill-over from the city. The area as a whole should continue to grow due to the shopping center and the easy access to the nearby interstate highway.

The city also introduced testimony on the reasonableness of the annexation from the viewpoint of those living in the proposed area of annexation. In addition to the testimony by the mayor that there was no snow removal or street maintenance, testimony was given by two of the named defendants. In summary, they described a total lack of fire protection in the area. The subdivisions had regularly spaced fire hydrants and had even gone so far as to buy a fire hose in an attempt to obtain a minimal degree of fire protection.[4] One of the subdivisions at one time had an informal agreement with Kirkwood to the effect that Kirkwood would assist in putting out fires, but the status of that agreement was doubtful at best. The testimony was that the concern over adequate fire protection was expressed by many of the residents of the area. It was also thought that the area would benefit by zoning and the zoning regulations that the city would provide.

Another concern to the residents of the area was adequate police protection. The area was served by the St. Louis County Police Department, but concern was expressed about the county's ability to promptly respond to calls for assistance. It

---

4. The record indicates that later the fire hose was either lost or stolen.

was generally assumed that annexation would provide at least some increase in police protection, this coming from the fact that the area would share in the coverage by the Des Peres Police Department.

■ Appellants argue that the city did not meet its burden of establishing the reasonableness of the annexation from the view of St. Louis County. We agree with appellants' contention that the needs of the county as a whole must be considered in an annexation decision. City of Olivette v. Graeler, 369 S.W.2d 85 (Mo.1963); St. Louis County v. Village of Champ, 438 S.W.2d 205 (Mo. banc 1969). However, we do not believe the situation here demonstrates any overwhelming county interest in the area. In the *Olivette* case, *supra,* the area of proposed expansion was highly developed and industrial in character. The area was self-sufficient, having better services than the city could have supplied. There was also evidence that the area was an integral part of the county's overall plan of regional development.

It is apparent that this is not the situation here. There has been no industrial build-up in the area. The services in the area are no better than those in the city. The area is plainly not part of any county plan. Furthermore, since the county was an intervenor in the suit below and since the county has not joined in this appeal, it would seem that the county in effect has conceded reasonableness as to it for all practical purposes.

■ Bearing in mind our statement earlier that there are no hard and fast rules applied in determining reasonableness, the courts nevertheless have been able to isolate certain factors as being specially relevant. Some of these factors have been amply summarized in the recent case of City of Mexico v. Salmons, 514 S.W.2d 102, 104 (Mo.App.1974): "The petitioning city should evince a need for residential or industrial sites within the proposed area.

Since the statute requires that annexation be reasonably necessary, petitioner should also manifest an inability to meet its needs without expansion. In determining a city's needs we may consider those which are reasonably foreseeable, but not those which are visionary, and should consider past growth to show future necessity. In evaluating future needs we should consider the extent to which past growth has caused the city to spill over into the proposed area." We also consider the extent to which Des Peres needs a voice in policing an area which is growing upon its doorstep. City of St. Joseph v. Hankinson, *supra,* 312 S.W.2d at 18. In addition, the fact that the area to be annexed consists of agricultural land does not make the annexation unreasonable, especially if the value of the land is derived from its potential for town use and not as farm land. City of Salisbury v. Nagel, 420 S.W.2d 37, 46 (Mo.App.1967). Nor does the presence of undeveloped land within the city call for a conclusion that the city is not in need of additional room for growth. City of Bourbon v. Miller, 420 S.W.2d 296, 302–03 (Mo. banc 1967). Even the lack of migration from the city to the area will not by itself show unreasonableness. City of Cameron v. Stafford, 466 S.W.2d 115 (Mo.App.1971).

■ Applying these and other factors to the present annexation, we cannot say that the trial court erred in finding the annexation reasonable. Here is a city which demonstrates need for additional land; here also is an area which needs more and better services. We are not prepared to declare an annexation under such circumstances unreasonable or unnecessary.

In arriving at this decision we are not unmindful of the vigor with which appellants have argued this case, as well as the large amount of testimony produced at trial in their behalf. We acknowledge that appellants presented testimony at odds with, and contradictory to, some of the city's evidence. In areas in which the question

was the credibility of witnesses, we defer to the trial court's ability to evaluate witness testimony. City of Ash Grove v. Davis, *supra.* As to the rest of the testimony produced by appellants, we find that at best, this evidence only shows that the issues in this case are "fairly debatable." That is the only burden that the city has to meet. City of Creve Coeur v. Brame, *supra.* If, as in a case like this, there is substantial evidence on both sides of the question, the legislative solution is determinative. City of Olivette v. Graeler, *supra,* at 96.

Judgment affirmed.

WEIER, P. J., and RENDLEN, J., concur.